(127 So. 872)

CERNIGLIA v. KRAL.

No. 28973.

March 31, 1930.

Henry & Cooper and A. M. Suthon, all of New Orleans, for appellant.

Brewer & Sere, of New Orleans, for appellee.

ROGERS, J.

Plaintiff sued to annul a lease, and for possession of the leased premises. Her demand was rejected by the court below, and she has appealed from the judgment.

Plaintiff is the owner of the premises No. 2500 Valence street in the city of New Orleans. This property, in February, 1926, was under lease with an unexpired term of four and a half years to one S. Liverman at a rental of $75 per month. Kral, the present defendant, purchased the unexpired term of Liverman's lease for $2,000, payable in monthly installments of $35 each. Subsequently, to wit, on February 26, 1926, plaintiff and the defendant entered into a new lease on plaintiff's building for a term of twenty-four years and five months, beginning April 1, 1926, and ending September 30, 1950. This contract stipulated for a monthly rental of $90 from April 1, 1926, to October 1, 1930, and for a monthly rental of $125 thereafter until the termination of the lease. The instrument signed by the contracting parties consisted of the ordinary printed form of lease customarily used in the city of New Orleans.

The provisions in this form whereby the lessee is made to bind himself "to make no alterations to said premises" and "to make no sublease in whole or in part, nor to transfer this lease in whole or in part," were stricken out. In lieu thereof, in the blank spaces left in the form for such purposes, the parties caused to be inserted in typewriting the following special agreements, viz.: "Lessee agrees to make alterations and improvements to said premises at his expense;" and, "Lessee is privileged to sublease in whole or in part to reliable party or parties." The usual insurance clause appearing in the printed form remained unchanged, namely, that the lessee was, "Not to do or suffer any act to be done or omitted which would forfeit the insurance or increase the rate thereof on any property of lessor or contents thereof to whomsoever belonging." The lessee also bound himself not to use the leased premises for any other purpose than as a business place and residence. It was further stipulated in the contract that: "Should the lessee at any time violate any of the conditions of this lease or fail to comply with any of the lessee's obligations hereunder * * * lessor shall have the option either at once to demand the entire rent for the whole term or to immediately cancel this lease without putting lessee in default."

The gravamen of plaintiff's action is that the defendant, after taking possession of the leased premises, proceeded over plaintiff's protest and objection, and in utter disregard of her rights as lessor, to make radical structural changes in the property, and to put it to a use for which it was not intended under the terms of the lease.

Plaintiff's property consists of a two-story frame building, which, at the time it was leased to defendant, was used for both busi-

ness and residential purposes. The alterations and improvements which defendant undertook to make therein, and to which plaintiff now objects, were begun in July or August, 1926. The first change made by defendant was on the lower floor of the center of the building, wherein he set off a space to be used as a restaurant. This restaurant was opened during the month of October, 1926, from which time it has been in constant operation. The second change made by defendant was in setting apart a space on the ground floor in the rear of the building for use as a barber shop. This shop was opened on December 13, 1926, from which date it has been operated without interruption. The third change made by the defendant was in remodeling the front portion of the lower floor of the building, which was subleased on February 1, 1927, as a flower shop. On January 10, 1927, defendant placed a large sign on the fence of the rear yard of the leased premises, which adjoined a garage located on the premises owned and occupied by plaintiff. This sign set forth that the vacant space would be occupied by a hardware store about April 1, 1927. Shortly thereafter, and a few weeks prior to the institution of the present suit, defendant began the construction of the hardware store.

The testimony in the record leaves no room for doubt that plaintiff knew prior to the execution of the lease what defendant had in mind, and what changes he intended to make in her building. It was for this reason that the specific agreements were inserted in the lease, permitting the lessee to make alterations and improvements in the leased premises and to sublet them in whole or in part. Plaintiff's knowledge in this respect explains why plaintiff, as is shown by a preponderance of the testimony, acquiesced in the changes that defendant was making from time to time

in the leased premises, and accepted, without protest, the monthly rental in accordance with the terms of their contract. In this connection, it is to be observed that the new lease was for a term of 25 years. That defendant was compelled to purchase the unexpired term of the Liverman lease in order that the agreement could be effected, which was done with plaintiff's knowledge. That, as the result of this purchase and the effectuation of the new lease, plaintiff's revenue was immediately increased from $75 a month to $90 a month, with a further increase to $125 a month to follow automatically after a period of five years. That at the time defendant took possession of plaintiff's building it was worth, approximately, $11,500, which was increased to approximately $35,000 by reason of improvements placed thereon by defendant at his own expense. That defendant is receiving an aggregate monthly rental of $200 for the ground floor of the leased premises, and is occupying the upper floor thereof as a residence. The last-mentioned circumstance may, in some measure, account for plaintiff's present desire to regain possession of her property.

Plaintiff's contention that she is entitled to have the lease forfeited because the improvements placed on her property by the defendant have increased the rate of insurance thereof is not tenable. The contention rests on the clause in the lease, which we have mentioned, whereby the lessee binds himself not to do or suffer any act to be done which would forfeit the insurance on the property or increase the rate of such insurance. The clause, itself, finds its way into the contract as part of the printed form used by the parties in evidencing their agreement. But the provisions of a contract, like those of a statute, are to be construed together so as to give effect to all, if it be possible to do

so. Where a particular provision is in irreconcilable conflict with the letter and spirit of the contract, taken as a whole, and the evidence shows that the presence of such provision is attributable to accident rather than design, and that it is meaningless and without application, it will be regarded as not written. Prentiss v. Lyons, 105 La. 382, 29 So. 944.

■ It is plain that the provision in regard to the insurance of the leased premises was inadvertently permitted to remain unchanged in the printed form of the contract. The provision, itself, is wholly irreconcilable with the provisions which were deliberately incorporated in the agreement as originally made, and which expressly authorized the lessee to improve the leased premises and to sublet them in whole or in part. In the very nature of things, it would be impossible for the lessee to make the improvements contemplated by the lease contract without increasing to some extent the insurance rate. Hence, in that respect, the clause is meaningless and must be regarded as not having been written.

At the time this suit was tried, plaintiff was in possession of a policy issued on March 14, 1927, at the old rate, which policy was not to expire for three years. Whatever increase in the insurance rate plaintiff may thereafter be called upon to bear will be negligible in comparison to the benefits which she is deriving from her contract with the defendant.

■ We think it would be most inequitable to take the property away from the defendant, which would have the effect, as he testified, of pauperizing him, and restore it to plaintiff, thereby permitting her to enrich herself at defendant's expense to the extent of more than $1,500 a year.

For the reasons assigned, the judgment appealed from is affirmed at the appellant's cost.