ODOM, Justice.
 

 Defendants own a plot of vacant ground in Jefferson Parish fronting on Jefferson Highway in Square 148 of what is known as the “Harlem Subdivision”, as per plan made by Hotard and Webb, civil engineers and surveyors. According to this plan, Square 148 is bounded on the south by Jefferson Highway and on the north by Hawkston Street. The owners appointed J. Wallace Paletou, Inc., realtors, their agents for the sale of the property.
 

 Someone, presumably the realtors, posted a large sign in front of the property on Jefferson Highway, advertising it for sale, the sign reading:
 

 “For Sale
 

 “210 Front By 205 Deep
 

 “Whole or Part
 

 “J. Wallace Paletou, Inc,
 

 “Realtors
 

 “822 Perdido St. Ra. 7117”
 

 
 *193
 
 Plaintiff and his wife, while driving on Jefferson Highway, saw the sign .and stopped. They wanted to establish in that vicinity what plaintiff referred to in his testimony as a “sea-food restaurant”, and they thought this vacant property might be a good location for such establishment. Plaintiff left his automobile and looked at the property. He went from there to the office of the realtor, where he made inquiry as to the price of the property and was told that it was for sale at $35 per front foot on Jefferson Highway. Plaintiff told the realtor that he did not want the entire frontage of 210 feet on Jefferson Highway but would purchase 120 feet frontage and pay therefor $3,500 cash. Plaifitiff asked the realtor what the depth of the property was and was told that it ran back a distance of 250 feet through the square. The realtor suggested to plaintiff that he make his offer to purchase in writing, which offer would be presented to the owners for their acceptance or rejection. The realtor wrote and presented to plaintiff an instrument which reads, in so far as it need be quoted, as follows:
 

 “I offer and agree to purchase Vacant property in square 148 nearest Harlem Ave., fronting on Jefferson Highway running thru square the grounds measuring approximately 120 x 205. or, as per title for the sum of Thirty-five Hundred and no/100 Dollars ($3500.00), on terms of Cash.”
 

 The instrument was then and there signed by plaintiff. This was on June 15, 1939, and the owners formally accepted the offer some three or four days later.
 

 Subsequent surveys and measurements of the plot of ground showed that, instead of having a depth of 205 feet, as stated in the advertisement and in plaintiff’s offer to purchase, it had a depth, according to surveyors Wadell and Hotard, of not more than 165 feet, which is the distance from the north edge of Jefferson Highway, through Square 148, to the south edge of Hawkston Street; so that the shortage in the depth of the plot, according to these surveyors, is 40 feet.
 

 Plaintiff, on learning that the lot did not have a depth of 205 feet as advertised and as stated in his offer to purchase, refused to accept the property at the agreed price of $3,500, but did agree to accept it provided defendants would allow a diminution in the price proportionate to the difference between the distance of 165 feet, as shown by the surveyors Wadell and Hotard, and the distance of 205 feet, as shown by the advertisement and in the offer to purchase. According to plaintiff’s calculation, the shortage amounts to 4,827 square feet, which, on the basis of the price agreed upon, would be worth $675.78, the diminution demanded.
 

 Defendants were willing to make deed to the property at the agreed price of $3,500 cash, but refused the diminution in the price demanded.
 

 This suit followed. Plaintiff in his petition set out the facts above stated, alleging that, before he signed the offer to purchase, he asked the defendants’ agent whether the lot had a depth of 205 feet, as advertised, and was told that it did, and that his offer
 
 *194
 
 was based upon that assurance; that he bargained for a lot having a depth of 205 feet; that the lot bargained for and tendered to him has a depth of only 165 feet, and that, since defendants do not own, and therefore cannot deliver, the measure of ground or square footage which they declared they owned, they must deliver to him what they have and suffer a diminution in price. „
 

 Plaintiff alleged further that, due to defendants’ default, he had suffered damages to the extent of $1,700 — $1,000 loss of profits which he would have derived from operating the restaurant which he expected to establish, $400 attorney’s fees, and $300 for loss of time, etc.
 

 He prayed for judgment ordering defendants to deliver the lot in controversy and ordering them to suffer a diminution in the price amounting to $675.78, thereby reducing the consideration from $3,500 .to $2,-824.22, and judgment for damages amounting to $1,700.
 

 Defendants filed in limine exceptions of no cause and no right of action, which were, in effect, referred to the merits. They filed answer, admitting the alleged facts relating to the execution of the written offer to purchase by plaintiff and their acceptance of it. They denied that their agent was authorized to represent that said lot had a depth in excess of that shown in their title or in excess of the actual distance through Square 148. They alleged that it was never their intention to sell the lot at so much per measure or per square foot, but that they intended to sell the lot as a whole, running through the square, or from street to street, as is shown by the contract itself, upon which they rely; that the sale was one per aversionem, which admits of no diminution in price.
 

 At plaintiff’s request, the case was tried by jury, which rendered a verdict in his favor on all points as prayed for. The verdict was approved by the trial judge, and judgment was signed accordingly. The defendants appealed.
 

 We need not discuss the exceptions filed by defendants. The verdict of the jury and the judgment carrying it into effect are wrong on the merits and must be set aside.
 

 Plaintiff relies mainly upon Articles 2491 and 2492 of the Revised Civil Code to support his case. These articles read as follows :
 

 “Art. 2491 (2467). Of Immovables; Seller’s Obligation. The seller is bound
 
 to-
 
 deliver the full extent of the premises, as specified in the contract,
 
 under the modifications hereafter expressed.”
 

 “Art. 2492 *(2468). When Premises Include Less Than Quantity Stipulated. If the sale of an immovable has been made
 
 with indication of the extent of the premises at the rate of so much per measure,
 
 the seller is obliged to deliver to the buyer, if he requires it,
 
 the quantity mentioned in the contract,
 
 and if he can not conveniently do it, or if the buyer does not require it, the seller is obliged to suffer a diminution proportionate to the price.” (Italics are the writer’s.)
 

 We here repeat the pertinent portion of the plaintiff’s offer to purchase, which was accepted by the defendants:
 

 
 *195
 
 “I offer and agree to purchase Vacant property in square 148 nearest Harlem Ave., fronting on Jefferson Highway running thru square the grounds measuring approximately 120 x 205 or, as per title for the sum of Thirty-five Hundred and no/100 Dollars ($3500.00), on terms of Cash.”
 

 This offer and agreement to purchase by plaintiff, having been accepted by defendants, became a contract which is binding upon the parties to it. Each of the parties relies upon it. This lawsuit is the result of a dispute between them as to the correct interpretation of its meaning.
 

 There is no dispute between the parties as to the identity of the lot or plot of ground which plaintiff intended to purchase and defendants intended to sell. They agree that it has a frontage of 120 feet on Jefferson Highway and runs back, or north, between parallel lines through Square 148 to Hawkston Street. They agree that the wording of the contract shows that the lot is bounded on the south by Jefferson Highway and on the north by Hawkston Street. Plaintiff prayed for judgment ordering defendants to transfer to him the lot of ground “as it actually stands and exists, * * * which said property is accurately described and shown on a plan of survey made under date of Sept. 5, 1939 (revised plan), by Hotard and Webb, Civil Engineers and Surveyors, as follows, to-wit”.
 

 Then follows a description of the lot described as being “in Square No. 148, bounded by Harlem Avenue, Worthington (Jefferson Highway) Hawkston and Lowerline Streéts”.
 

 The boundaries referred to are the boundaries of Square 148. It is important to note these boundaries because the contract itself shows that the lot is in Square 148 and runs “thru square”. The “plan of survey” of the lots made by Hotard and Webb, which plaintiff alleges accurately shows and describes the lot, is attached to, and made a part of, the petition. This plan of survey is before us, and we note that it shows that the lot is bounded on the south by Worthington Street, now Jefferson Highway, and on the north by Hawks-ton Street, the street and highway being clearly designated on the plan referred to.
 

 We cannot concur in the view expressed by counsel for plaintiff that the provisions of Article 2492 of the Civil Code are applicable to a case of this kind. That article applies to sales of immovable property made “with indication of the extent of the premises at the rate of so much per measure”. In other words, the article relates to sales where the “extent of the premises” is to be so many acres or arpents, square feet or yards, and the price is to be “at the rate of so much per measure”. That is what the article says. It relates to sales where “quantity” is involved. In such sales, says the Code, the seller is obliged to deliver to the buyer, if he requires it, “the quantity mentioned in the contract”, and, if he cannot do so, he is “obliged to suffer a diminution [in price] proportionate to the price”.
 

 In this case no “quantity” is mentioned in the contract, and it is not stated that the sale is to be made “at the rate of so much per measure”. The buyer was to pay, and
 
 *196
 
 the sellers were to get, a- named sum of money for the whole of a certain lot or plot of vacant ground. In other words, the lot or plot of ground was to be sold as a whole, or as a unit, and not at a specified price by the foot. Each knew and well understood that the lot was to have a frontage of 120 feet oil Jefferson Highway and was to run back, or north, through Square 148 to Hawkston Street. The contract so stated in plain terms. Plaintiff says he read the contract before he signed it, and that he noticed that portion of the description which showed that the lot ran “thru square”. He knew, therefore, that the lot he was to get had fixed boundaries on the north and on the south, and that the depth of the lot could not exceed in feet the distance between those boundaries. He knew also, of course, that, regardless of the statement in the contract that the lot had a depth of 205 feet, he could get no more depth than the lot actually had.
 

 We do not have to look beyond the four corners of the instrument itself to learn what was the intent of the parties. That instrument shows on its face that plaintiff intended to purchase, and defendants intended to sell, a certain lot or plot of vacant ground, as a whole, in Square 148 of the “Harlem Subdivision”, the lot fronting on the highway and running back through the square. And it is irpportant to note that by his suit plaintiff demands that defendants transfer to him “said property as it actually stands and exists”. That is what he intended to get, what he wants now, and that is what defendants intended to deliver, for that is all they had and they could de^ liver no more. This is clearly shown by the contract itself when it is read as a whole.
 

 “All clauses of agreements are interpreted the one by the other, giving to each the sense that results from the entire act.” Revised Civil Code, Article 1955.
 

 All the provisions of a contract are to be construed together so as to give effect to each of the provisions, if possible. Cerniglia v. Krai, 170 La. 372, 127 So. 872. A contract must be construed as a whole and in the light of conditions and circumstances existing at the time. Andrews Coal Co. v. School Board, 151 La. 695, 92 So. 303. A contract containing several clauses evidencing an agreement between the contracting parties is to be viewed as a whole, and the intentions of the parties are to be gathered from all parts of it, to the end of giving practical effect to the instrument in the way in which such contracts are ordinarily understood. Lozes v. Segura Sugar Co., 52 La.Ann. 1844, 28 So. 249.
 

 Counsel for plaintiff says in his brief at page 21, after referring to the above established rules for the interpretation of contracts, that this court “cannot fail to consider the special clause providing for a fixed depth of approximately 205 feet, as specifically provided in the contract under consideration”. We have given that clause consideration, and our conclusion is that it does not prevail over other clauses in the contract relating to the description. Under the above stated rules, that clause must be construed with other clauses in order to ascertain the true intent of the parties. Construing the agreement as a whole,
 
 *197
 
 it clearly appears- to us that the plaintiff intended to purchase, and defendants intended to sell, a certain designated lot with the front and rear boundaries fixed.
 

 Plaintiff did not allege, nor does he now contend, that he was induced to sign the contract through fraud perpetrated by defendants. The testimony shows that neither the realtor nor defendants were quite certain as to the depth of the lot. The record discloses that Square 148 of the “Harlem Subdivision” is bounded on the north by Hawkston Street and on the south by Worthington Street, now Jefferson Highway, and that it originally had a depth of 240 feet between those boundaries. These defendants acquired the property by inheritance from their father, and during-their minority their tutor made two sales to the police jury for a right-of-way for Jefferson Highway, each conveying a strip of ground 25 feet in width off the south side of Square 148. This reduced the depth of the square to 190 feet, according to the conveyance records.
 

 The record further discloses that the police jury, or the highway commission, in building Jefferson Highway encroached without authority and probably by mistake upon Square 148 a distance of 25 feet beyond the limits of its purchases, which accounts for the fact that the distance between the north edge of the highway and the south edge of Hawkston Street is now only 165 feet. The fact that defendants were minors at the time the sales were made and that they did not know of the encroachment upon their property by the police jury lends credence to their testimony that they were not quite certain as to the depth of the lot. We have no doubt, therefore, that the representation that the lot had a depth of 205 feet was made- in good faith and through error.
 

 The question, then, is whether defendants must suffer a diminution in the price of the lot. We do not think they should. This controversy arose over the depth of the lot, and, as to that dimension, the sale was to be from boundary to boundary, as is clearly shown by the contract. It was therefore to be a sale per aversionem. Article 2495 of the Revised Civil Code governs cases of this kind. It reads as follows :
 

 “Sale Per Aversionem. There can be neither increase nor diminution of price on account of disagreement in measure, when the object is designated by the adjoining tenements, and sold from boundary to boundary.”
 

 There is another article of the Code which contains similar provisions. It is Article 854, which reads as follows:
 

 “Sales By Metes and Bounds (Per Aversionem). If any one sells or alienates a piece of land, from one fixed boundary to another fixed boundary, the purchaser takes all the land between such bounds, although it give him a greater quantity of land than is called for in his title, and though the surplus exceed the twentieth part of the quantity mentioned in his title.”
 

 Defendants concealed nothing from plaintiff. The back boundary of the lot was a street, and plaintiff knew it. The street was visible, as was a fence along
 
 *198
 
 the edge of it. Plaintiff did not allege, and does not now claim, that defendants perpetrated any fraud upon him. In the absence of fraud or concealment, the rule established by the jurisprudence of this state is that, in sales where specific boundaries are given or where the sale includes property from one fixed boundary to another, the sale is per aversionem, and the seller conveys, and the buyer gets, all the property within the boundaries given, whether it be more or less than the measure mentioned in the contract, and that, in sales where fixed boundaries are designated, such measurements and distances as may be mentioned in connection with the' description must yield to the designated boundaries.
 

 It would serve no useful purpose to review the jurisprudence which supports this rule. We need cite only two comparatively recent cases, in which this court with precision and at great length cited and reviewed the earlier pertinent cases. The cases to which we refer are Consolidated Companies v. Haas Land Co., 179 La. 19, 153 So. 6 (on rehearing), and Passera v. City of New Orleans, 167 La. 199, 118 So. 887. See, also, Hunter v. Forrest, 183 La. 434, 441, 164 So. 163.
 

 Our jurisprudence is in accord with-that which prevails elsewhere, as shown by the following extract which we quote from 27 R.C.L., Section 146, page 432:
 

 “And as a general rule, where the sale is of a particular tract for a gross sum to be paid for the whole tract and not at a specified price by the foot or acre, though the tract is also, described as containing a certain quantity, it is considered as a sale of the actual quantity within the designated boundaries, without reference to the quantity or measure of the premises mentioned in the contract or conveyance; and where there has been no fraud or misrepresentation the purchaser is neither liable for a surplus nor entitled to a deduction in the price on account of any deficiency in the quantity or measure .mentioned.”
 

 The last sentence of that section reads as follows:
 

 “The Louisiana code, however, has in effect adopted the general rule prevailing in this country and placed the vendor and the purchaser upon an equality as regards any surplus or deficiency in the quantity mentioned.”
 

 Counsel for plaintiff suggests that this was not to be a sale per aversionem because the east and west boundaries of the lot were not mentioned. There is no merit in this suggestion. It is true that the lot or plot of ground was not bounded on either the east or the west side by streets or by visible markers of any kind. But there is no controversy over the width of the lot. The controversy relates to the depth of the lot, i. e., its length from north to south, and as to that dimension the lot has fixed boundary lines. The plaintiff understood that the lot or plot of ground he was to get was to run from Jefferson Highway on the south through the square to Hawkston Street, between parallel lines 120 feet apart.
 

 Counsel for plaintiff cites the following cases to support his contention that this was not to be a sale per aversionem: Me-
 
 *199
 
 Bride v. Elam, 8 La.App. 520; Phelps v. Wilson, 16 La. 185; Lesassier v. Dashiell, 13 La. 151; Hall v. Nevill, 3 La.Ann. 326, and Favrot & Livaudais v. Stauffer, 112 La. 158, 36 So. 307.
 

 The cases are not in point. In the McBride case, the property sold was a part of a larger tract, the larger tract being specifically described by surveys showing distances, angles, etc., the land sold being described as “The part of said tract hereby sold being that part lying west of said dirt road, containing 7.50 acres, more or less”. It was held that this was not a sale per aversionem, although the court did say that the tract of land sold had definite boundaries. If in fact the land sold had fixed and definite boundaries and was sold with reference to them, a fact which is not clear to us from our reading of the description, we cannot understand how the court reached the conclusion it did.
 

 In Phelps v. Wilson, the court said:
 

 “In order to be considered as a sale per aversionem, it is necessary that the object should be designated by adjoining tenements, and sold from boundary to boundary; Idem., article 2471 [2495], which circumstance does not exist in the sale in question.”
 

 In jLesassier v. Dashiell, it appears that the seller had led the buyer into error by fraudulent claims as to the real quantity within the specified boundaries.
 

 In Hall v. Nevill, the sale was held not to be one per aversionem, the court saying:
 

 “This was not a sale per aversionem, the property not being designated by adjoining tracts or tenements, nor sold from boundary to boundary.”
 

 In Favrot & Livaudais v. Stauffer, the description in the deed called for property “measuring thirty-one feet front on Per-dido Street, by a depth between parallel lines and front on Carondelet Street of one hundred and seventeen feet two inches and six lines”. The measure in dispute was the frontage on Perdido'Street, which in the deed was stated to be 31 feet, when as a matter of fact the property actually had a frontage on that street of only 21 feet. The court, without discussing the general rules relating to sales per aversionem, stated that this was not such a sale, but was a sale by measurement.
 

 For the reasons assigned, the verdict of the jury and the judgment carrying it into effect are set aside, and it'is ordered that plaintiff’s demands be rejected and his suit dismissed at his cost.