This is a suit brought by the plaintiff against the defendant for a diminution in the purchase price of property which the former purchased from the latter, coupled with a claim for damages resulting from the non-delivery of a portion of the property sold to plaintiff by defendant, all amounting to the sum of $405, with legal interest from judicial demand until paid.
Plaintiff, in substance, avers that she purchased, on October 14, 1940, through the misrepresentation of an agent of the defendant, the following described property, situated in the City of Lafayette, to-wit:
"That certain parcel of ground, with all improvements thereon and thereto belonging, situated in that portion thereof known as the Mills Addition to the City of Lafayette, La., said parcel having a front on Voorhies Street of fifty (50) feet by a depth on the north line of one hundred fifteen (115) feet, and along the southern line a depth of one hundred and eleven (111) feet, and having a width in the rear of sixty (60) feet; said extra width beginning along the western line at a point fifty (50) feet south of Voorhies Street, an offset at right angle of Ten (10) feet being there formed; said parcel comprising the western thirty (30) feet of the northern portion of lot number two hundred and thirty two (232) Mills, the eastern portion of lot number two hundred thirty one (231) Mills and a very small strip in the northeast corner of lot number two hundred thirty three (233) Mills, bounded north by Voorhies Street, south by lots of Charles Martin, a part of lot number two hundred and thirty two (232) Mills, east by lots of E.A. O'Brien and Earl Ditch and West by lots of H. Jagou or assigns, and Mrs. I.P. Foote, part of lot number two hundred and thirty one (231) Mills and slightly by lot of Mrs. Abbie Lester, a part of lot number two hundred thirty three (233) Mills, being part of the same property acquired by the vendor by act No. 150123 of record in Clerk's office, Lafayette Parish, Louisiana."
She further avers that the strip of land measuring ten feet in width by sixty feet in depth as described in the deed of her acquisition was known or should have been known to belong to some other third parties by the defendant but unknown to her, and that the defendant could not transfer title nor deliver possession unto her; that through misrepresentation, fraud or error, the said defendant, nevertheless transferred the said strip of land in the act of sale, and which strip of land is an area of land containing more than ten per cent of the total area of the lot conveyed to her.
The amount of the price stipulated in the deed is $2500. The asserted value of the diminution claimed by plaintiff is $255. The asserted claim for damages consists of (1) "Depreciation of the lot and failure of purchaser to utilize contiguous lot to built runway and the necessity of moving house, $100.00." (2) "The expense of employing counsel, $50.00."
The defendant filed an exception of no right or cause of action. This exception was overruled by the trial court. After the overruling of this exception, the defendant answered. After admitting the sale of the property to plaintiff under the description set out in her petition, the consideration of the sale, amicable demand made upon it for the sum claimed, the want of delivery to plaintiff of the strip of land in question, the deprivation of the possession thereof, the inclusion of the strip of land by measurements in the description of the lot sold to plaintiff, defendant denied the remainder of the allegations of plaintiff's petition.
In further answer, defendant sets out that the lot sold, inclusive of the strip of land in question, on December 15, 1928, belonged to one J.A. Trahan. On August *Page 206 
15, 1930, defendant purchased the lot, exclusive of the strip however; on the same day it sold to Fred Voorhies the said lot, exclusive of the strip. Fred Voorhies sold the lot, exclusive of the strip, to Lafayette Lumber Company. Lafayette Lumber Company sold the lot, exclusive of the strip, to Lafayette Real Estate Investment Company; that in all subsequent alienations of the lot, the strip of 10 by 65 feet was erroneously included in the measurement used in the transfers. It set up that it was never the owner of the strip and that the error in description was caused by copying the description from incomplete acts in its files. It avers that it advertised the property for sale, exclusive, however, of the strip. Plaintiff negotiated for the purchase of the lot, exclusive of the strip, and finally the property was sold per aversionem.
Upon these issues, the case was tried. There was judgment in favor of defendant, dismissing plaintiff's suit. She has appealed.
[1] In this Court, defendant filed a motion to dismiss the appeal, averring that the judgment appealed from had been rendered under date of September 29, 1944, signed in open Court under date of October 19, 1944, the appeal moved for and granted in Chambers on April 20, 1945, all at Abbeville, Louisiana, and that the motion for appeal did not contain a prayer for citation nor an order for citation on defendant, and it was not issued or served on it, a Louisiana corporation. In substantiation of said motion, defendant-appellee has filed an affidavit by the deputy clerk of court, Vermilion Parish, of which Abbeville is the County seat, to the effect that the minutes do not show that any motion of appeal was made and granted in open court in the case.
The Parishes of Acadia, Lafayette and Vermilion comprise the Fifteenth Judicial District Court of Louisiana, of which district His Honor, W.W. Bailey, residing in Abbeville, the Parish of Vermilion, is one of the presiding judges of the said district, and was presiding judge in this case. He has the authority to sign judgments in any case within his district and to grant appeals in chambers anywhere within his district. This is conceded by the defendant-appellee.
The facts show that the case was tried at Lafayette; Lafayette Parish, wherein the defendant has its domicile. The judgment was rendered on September 29, 1944, and signed on October 19, 1944, in open court at Abbeville. On April 20, 1945, the trial judge was presented with a motion prepared by the attorney for plaintiff, which was signed and granted by the trial judge, which reads as follows:
"On motion of Moise Thibodeaux, Attorney for the Plaintiff, Leona Wiltz, in the above entitled and numbered cause, and on suggesting to the Court that plaintiff is aggrieved by the judgment rendered herein on the 29th day of September, 1944, and signed on the 19th day of October, 1944; that the said judgment is contrary to the law and the evidence, and that mover desires to appeal therefrom to the Court of Appeal of the First Circuit of the State of Louisiana;
"It is ordered that a devolutive appeal be granted to Leona Wiltz, the plaintiff in this cause, returnable to the Court of Appeal of the First Circuit of the State of Louisiana on the 29th day of May, 1945, upon said plaintiff furnishing her bond according to law, or in the sum of $200.00.
"Abbeville, La., this 29th day of April, 1945."
On the filing of this motion, together with proper bond, and upon instruction from the attorney of plaintiff to serve either the attorneys of record or the defendant itself, the Clerk of the Court for the Parish of Lafayette, the original situs of the case, domicile of defendant, and the attorneys of record, issued a citation or notification of appeal directed to the attorneys of record and which notice of appeal, together with a copy of the original motion for appeal was duly served on the said attorneys of record on May 7, 1945.
The contention of defendant-appellee that the appeal should be dismissed because the plaintiff-appellant failed to ask for a citation of appeal to issue and the failure of the judge to order such citation of the defendant-appellee is not well taken. It is fully answered by the last expression of the Supreme Court in the case of Pool v. Gaudin, 207 La. 403,21 So.2d 424, 425. Says the Supreme Court:
"It is our opinion, therefore, that the appellant's failure to proceed by petition in obtaining the order of appeal in this case, his failure to pray for citation of appeal in the motion, and the judge's failure to order such citation, were all irregularities that were cured when the defendant was served with the citation before the day *Page 207 
fixed for lodging the transcript in this court. The fundamental basis for the citation was thus satisfied."
[2] Admitting the correctness or force of this decision whenever the appellee itself has been cited, defendant-appellee, however, contends that the said decision is inapposite to the case at bar in that it was not served with a citation or given a notice of appeal even up to the time of filing of its brief and argument, contending that the citation or the giving of notice of appeal to its attorney of record was not a citation to it as provided by C. P. Article 582. Article 582, as amended by Act 78 of 1878, reads as follows: "The Sheriff shall serve the citation of appeal on the appellee, if he reside in the State, and on his advocate if he do not, and in default of advocate, on a curator ad hoc, to be appointed by the court for said purpose, by delivering a copy of the same to such appellee, or to his advocate, or to such curator ad hoc, or by leaving it at the place of his usual domicile."
Its contention would be well founded in that the defendant is a Louisiana corporation domiciled at Lafayette if the Legislature of Louisiana had not enacted Act 120 of 1938. This act reads as follows:
"Section 1. Be it enacted by the Legislature of Louisiana, That after any civil suit has been brought and the defendant or other parties have appeared through counsel, service of all other process in the suit, except garnishment process, but including supplemental petitions, or original and supplemental petitions of said other parties, such as intervenors or third opponents or others, may be accepted by, or service may be made upon, the attorney of record, or where there is more than one attorney, upon any one attorney of record, for the plaintiffs or defendants, and the right so to serve shall remain until the attorney shall have formally withdrawn from the case, under order of court; this rule shall also apply to the attorney for plaintiff, intervenors or third opponents or other parties; and the provisions of this Act being hereby made applicable for use in any cause or causes now pending or not finally determined in the Courts of this state.
"Section 2. That all laws or parts of laws in conflict herewith be, and the same are, hereby repealed."
Our interpretation of this act is that it supersedes C. P. Art. 582, as amended by Act 78 of 1878, whenever either party to a suit is represented by an attorney of record and such attorney of record has not formally withdrawn from the case. In the case at bar, the attorneys of record have not formally withdrawn from the case but are now acting and representing the defendant-appellee before this court.
[3, 4] The right of appeal is favored under our law and jurisprudence. This right, however, is subject to the opposing party being given notice of such appeal in order that he may protect his interest so that he may appear and answer the same. In the case at bar, defendant-appellee was duly cited through its attorney and given notice of the appeal and has been given full opportunity to protect its interest in this case. In fact, the motion to dismiss is without any reservation whatsoever, appearing through the attorneys of record. Knowledge to the attorney of record is knowledge to the client whenever the attorney of record still represents the client. This seemed to have been the underlying principle which brought about Act 120 of 1938.
Defendant's motion to dismiss the appeal is therefore overruled.
[5] It appears from defendant's brief that it has abandoned its exception of no right or cause of action and rightly so. The exception was based on the case of Fitzgerald v. Hyland,199 La. 381, 6 So.2d 321, decided by our Supreme Court, wherein it was held, on the merits, that the sale in question was one of per aversionem. In the case at bar, the allegations of plaintiff's petition are sufficiently broad to admit proof of misrepresentation and fraud. However, admitting that the allegations were not sufficient to admit proof of fraud, the question of the character of the sale, that is, whether it is one of per aversionem or of measurement goes to the merits of the case. The exception was properly overruled.
The plaintiff contends that she bought by measurement, while the defendant contends that it sold the property by boundary or that the sale is one of per aversionem. In other words, plaintiff contends that the sale is governed by C. C. Article 2492, while defendant contends that the sale is governed by C. C. Article 2495.
[6] The primary obligation of a vendor is the obligation of delivery, Civil Code, Article 2475, and if he fails to do so he is *Page 208 
liable for all damages to the buyer occasioned by the non-delivery, C. C. Article 2486. These rules are however subject to Civil Code Articles 2492, 2493, 2494 and 2495.
Article 2492 provides: "If the sale of an immovable has been made with indication of the extent of the premises at the rate of so much per measure, the seller is obliged to deliver to the buyer, if he requires it, the quantity mentioned in the contract, and if he can not conveniently do it, or if the buyer does not require it, the seller is obliged to suffer a diminution proportionate to the price."
Article 2493 provides: "If, on the other hand, there exists an extent of more than what is specified in the contract, the buyer has a right, either to give the supplement of the price, or to recede from the contract, should the overplus be upwards of a twentieth part of the extent which is declared."
Article 2494 provides: "In all other cases, whether the sale be of a certain and limited body, or of distinct and separate objects, whether it first set forth the measure, or the designation of the object, followed by its measure, the expression of the measure gives no room to any supplement of price, in favor of the seller, for the overplus of the measure; neither can the purchaser claim a diminution of the price on a deficiency of the measure, unless the real measure comes short of that expressed in the contract, by one-twentieth part, regard being had to the totality of the objects sold; provided there be no stipulation to the contrary."
Article 2495 provides: "There can be neither increase nor diminution of price on account of disagreement in measure, when the object is designated by the adjoining tenements, and sold from boundary to boundary."
[7] The record discloses that defendant never did own the 10'x60' strip. However, the president of defendant testified that when it foreclosed on a mortgage against the Lafayette Realty Company, its secretary gave to its attorney the wrong description of the property by including the strip as being covered by the mortgage. The Sheriff's adjudication to it likewise erroneously carried the strip as belonging to the lot owned by the mortgagor. Desirous of disposing of the property, defendant placed a "for sale" sign on the property. Plaintiff owned the adjoining lot to the west, being the corner lot. Plaintiff called at defendant's office with the view of purchasing the property. After negotiations, the deed was passed, giving the description of the property as alleged in the petition. After the deed was confected, plaintiff was informed that a garage encroached on the 10' by 60' strip. She called at defendant's office and demanded a survey of the property as called for by her deed, and informed the defendant, through its secretary, of the encroachment of the garage on the 10'x60' strip. Defendant's secretary informed her that she was the owner of the strip and to make demand on the owner of the garage to remove. Thereafter, after investigation of the title and survey of the property, it was found that defendant did not have a legal title to the strip, and consequently did not have title to the same.
There is no question that there was error on the part of the defendant but there is also no question that this error was not a misrepresentation or fraud practiced by the defendant on the plaintiff, the error having been discovered only after the confection of the deed.
The plaintiff in this case was a property owner on the west of the lot involved. She knew the various lines of demarcation such as fences as existed on the property. She knew that the property was bounded on the north by Voorhies Street, having a front thereon of 50 feet, on the east by the properties of E.O. O'Brien and Earl Ditch, south by lots of Charles Martin, a part of Lot No. 232, and west by herself and the property of Mrs. I.P. Foote. She knew, according to her own testimony that immediately south of the southeast corner of her property, there was a garage situated on this 10' by 60' strip facing west for the use and benefit of Mrs. Foote's lot, and a fence extending therefrom in a southerly direction to Lot 233. She admits that she was only induced to purchase the property by a sign posted on the property. By mere observation of the lot and its enclosure, she could and should have determined its true dimensions. The way the garage faced, gave her notice that it was not on the lot about to be purchased and for its use. The fence extending south from the garage also gave her notice of the lot's western boundary.
We are of the opinion that this case is controlled by the case of Fitzgerald v. Hyland, 199 La. 381, 6 So.2d 321, 325. In that case, the property was said to be situated in a square or block bounded on four *Page 209 
sides by streets. The lot therein sold was described as being in that square with a front of 120 feet on Jefferson Highway by a depth of 205 feet. The plat of survey showed the depth of the lot to be 165 feet. The court held that the back boundary was a street, to the knowledge of plaintiff, and which was visible together with a fence along the edge of it.
Says the Supreme Court: "In the absence of fraud or concealment, the rule established by the jurisprudence of this state is that, in sales where specific boundaries are given or where the sale includes property from one fixed boundary to another, the sale is per aversionem, and the seller conveys, and the buyer gets, all the property within the boundaries given, whether it be more or less than the measure mentioned in the contract, and that, in sales where fixed boundaries are designated, such measurements and distances as may be mentioned in connection with the description must yield to the designated boundaries."
For these reasons, the judgment appealed from is affirmed.