385 So.2d 902 (1980)
SUCCESSION of Elizabeth Gerard TEDDLIE also known as Betty G. Teddlie.
No. 14187.
Court of Appeal of Louisiana, Second Circuit.
June 10, 1980.
Rehearing Denied July 24, 1980.
John R. Pleasant, Shreveport, for plaintiff-appellant Joan Levering Jack.
Tucker, Martin, Holder, Jeter & Jackson by Robert McLean Jeter, Jr., Shreveport, for defendants-appellees A. Porter Teddlie and James J. Halley, Co-Executors of The Succession of Elizabeth Gerard Teddlie.
L. Edwin Greer, Shreveport, for defendant-appellee Walter B. Levering, Jr.
Before PRICE, HALL, and JASPER E. JONES, JJ.
En Banc. Rehearing Denied July 24, 1980.
HALL, Judge.
In this ancillary probate proceeding, plaintiff, Joan Levering Jack, appeals from a judgment rejecting her demand to reduce bequests contained in the will of her mother, Elizabeth Gerard Teddlie, and to be *903 placed in possession of her legitime of the Louisiana immovable property belonging to the estate of her mother, a Nevada domiciliary. We affirm the judgment, finding that plaintiff, in a written compromise agreement with the defendants, legatees and executors of the estate, agreed not to attack the validity of the will which purposely excluded any bequests to her, thereby precluding her present action to reduce the bequests contained in the will.
Plaintiff's mother died testate in Nevada on June 23, 1975, survived by her husband, A. Porter Teddlie, and by two children of a previous marriage, plaintiff and Walter B. Levering, Jr. Her will purposely excluded any bequests to plaintiff. Plaintiff consulted an attorney in New York, her home state, who in turn consulted an attorney in Nevada, the purpose of the consultations obviously being to determine whether plaintiff had any claims to the estate. The attorneys looked into the validity of the will and determined that under Nevada law there was no basis on which to attack its validity. Their attention focused on the interest of the decedent in an "oil trust" which had been bequeathed to her by her aunt, Mary B. Gerard, subject to a power of appointment. An issue was raised as to whether the power of appointment had been specifically exercised in decedent's will as required by New York law.
Negotiations were carried on between plaintiff's attorneys and the attorneys and executors for the estate. Various proposals for compromise were made and from the outset an agreement by plaintiff not to attack the validity of the will was a suggested part of the proposed compromise. Ultimately, an agreement was reached, reduced to writing on December 17, 1975, and approved by the Nevada probate court.
In the compromise agreement, plaintiff received a one-third interest in her mother's interest in the oil trust, her brother received a one-third interest, and a trust named in the mother's will received a one-third interest. The compromise agreement contains the following recital:
"... Said Last Will and Testament of said decedent dated August 10, 1973, made no provision therein for the decedent's daughter, JOAN LEVERING JACK, and after a thorough review of the matter, and with the advice of counsel, JOAN LEVERING JACK has determined not to contest the validity of said Last Will and Testament."
The agreement contains the following specific covenant and agreement:
"9. JOAN LEVERING JACK and WALTER B. LEVERING, JR. hereby waive any claim which they might have to contest the validity of the Last Will and Testament of ELIZABETH GERARD TEDDLIE dated August 10, 1973, and consent to the probate of said Will in any Jurisdiction where said probate may be necessary."
The value of the interest received by plaintiff in the oil trust under the compromise agreement was approximately $103,000. The value of her claimed one-fourth legitime in Louisiana immovable property is approximately $22,000.
Plaintiff contends the compromise dealt only with the oil trust and had nothing to do with plaintiff's Louisiana legitime rights, which were never discussed by any of the parties and of which plaintiff had no knowledge at the time the agreement was made. Plaintiff further contends that the interest in the oil trust was received by her under the will of Mary B. Gerard and formed no part of Mrs. Teddlie's estate; consequently, the value of that interest cannot be considered in determining whether plaintiff's legitime in decedent's Louisiana property has been satisfied.
Defendants contend plaintiff's agreement not to question the validity of decedent's will amounts to an agreement not to question or seek to reduce the bequests contained therein. Defendants point out that even if plaintiff and her attorneys were unaware of the Louisiana law of forced heirship, compromise agreements are not vitiated by errors of law. Defendants argue that plaintiff and her attorneys were aware that the decedent had property in *904 many states, including Louisiana, as evidenced by the agreement not to attack the validity of the will in any jurisdiction where it might be probated. Finally, defendants contend the interest plaintiff received in the compromise devolved from the estate of Mrs. Teddlie because the power of appointment contained in the will of Mary B. Gerard is invalid and considered as not written in Louisiana, with the result that as to Louisiana property, the interest in the oil trust belonged to Mrs. Teddlie free of the power of appointment. Consequently, defendants argue, the value of the interest received by plaintiff in the compromise exceeded and satisfied her legitime in the Louisiana property.
Because we view the compromise agreement as determinative of the case, it is unnecessary to discuss the issues relating to the power of appointment and satisfaction of the legitime.
The applicable law concerning transactions and compromises is set forth in the following articles of the Civil Code:
LSA-C.C. Art. 3071:
"A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.
"This contract must be reduced into writing."
LSA-C.C. Art. 3073:
"Transactions regulate only the differences which appear clearly to be comprehended in them by the intention of the parties, whether it be explained in a general or particular manner, unless it be the necessary consequence of what is expressed; and they do not extend to differences which the parties never intended to include in them.
"The renunciation, which is made therein to all rights, claims and pretensions, extends only to what relates to the differences on which the transaction arises."
LSA-C.C. Art. 3078:
"Transactions have, between the interested parties, a force equal to the authority of things adjudged. They can not be attacked on account of any error in law or any lesion. But an error in calculation may always be corrected."
LSA-C.C. Art. 1846:
"Error in law, as well as error in fact, invalidates a contract, where such error is its only or principal cause, subject to the following modifications and restrictions:
"... 2. A contract, made for the purpose of avoiding litigation, can not be rescinded for error of law.... "
It is a general proposition in Louisiana that compromises are favored in the law. By use of this device potential litigants can reach a satisfactory resolution of their differences without undergoing an often expensive and time-consuming lawsuit. It is in the interest of the state that there be an end to or an avoidance of litigation. Such settlements are not invalidated lightly in the absence of bad faith, error, or fraud. See Succession of LaHaye, 361 So.2d 1351 (La.App. 3d Cir.1978).
The meaning and effect of a compromise agreement is determinable on the principle that the contract must be construed as a whole and in the light of attending events and circumstances. Fitzgerald v. Hyland, 199 La. 381, 6 So.2d 321 (1942); Green v. James, 295 So.2d 921 (La.App. 1st Cir.1974), writ refused 299 So.2d 792 (1974).
Compromises whereby an heir has given up his rights in a succession have been upheld in numerous cases. See Cochran v. Cochran, 46 La.Ann. 536, 15 So. 57 (1894); Succession of LaHaye, supra.
In return for the interest in the oil trust, plaintiff agreed to waive any claim to contest the validity of the will and consented to its probate in any state. In effect, she waived all other claims to her mother's estate, which was totally disposed of by her will. By agreeing not to contest the validity of the will, plaintiff agreed not to contest any provision or bequest contained in *905 the will, or to contest any provision or bequest being given full force and effect as written.
Although a suit to "reduce" a legacy may not in technical language be an attack on the "validity" of the legacy, it amounts to the same thing. This action is, in actual effect, an attack on the validity of the bequests contained in the will to the extent that the bequests exceed the legitime.
It matters not that plaintiff might have been unaware of her forced heirship rights in Louisiana and might not have had a specific, conscious intent to waive those rights. A compromise cannot be attacked on account of an error of law. Further, as noted above, the language of the compromise agreement expresses an intent on the part of plaintiff to waive any claims she might have had to contest the will or any part thereof. The expressed intent was to waive "any claim", expressed in a general manner without limitation, which plaintiff could assert only by contesting the will or its provisions. The "differences" compromised were any claims plaintiff might have as opposed to the provisions of the will which left all of decedent's property to others. There is no language in the agreement to indicate that any of the parties intended anything other than to settle all rights and claims plaintiff may have had to her mother's estate.
For the reasons assigned, the judgment of the district court rejecting plaintiff's demands is affirmed, at appellant's costs.
Affirmed.