ALFORD, Judge.
The plaintiff, Larry Jordan, appeals from the trial court decision dismissing his claims against the defendants, City of Baton Rouge and Dealer’s Wrecker Service. On appeal, plaintiff urges the following assignments of error: 1) the trial court erred in failing to find that plaintiff’s car was illegally impounded for ninety days; 2) the trial court erred in finding that the release form signed by plaintiff barred his claims against the City of Baton Rouge and Dealer’s Wrecker Service; 3) the trial court erred in finding that the return of plaintiff’s automobile by Dealer’s Wrecker Service was pursuant to a negotiated contract with plaintiff.
FACTS
On the evening of February 24, 1985, Jordan and several other persons were riding in his 1970 Buick automobile. They stopped near a parked car on Interstate 10 in Baton Rouge; some of the Buick’s occupants approached the parked car and allegedly burglarized it. The burglarized vehicle’s owner and companions returned while Jordan and his friends were still at the scene; whereupon, Jordan and the others with him fled in the 1970 Buick. The victim’s companions gave chase while the victim remained with his car; they alerted two Baton Rouge City Police officers that a burglary had been committed by the passengers of the pursued Buick.
Larry Jordan was placed under arrest for burglary by Officer Johnny Wheeler; his car was searched at the scene and impounded. Certain items found in plaintiff’s car were readily identified as belonging to the victim and were immediately returned to him. Officer Wheeler discovered later that evening that other items he had observed in plaintiff’s automobile also belonged to the victim.
Jordan remained in jail for approximately three and one-half days. On the fourth day after his release, plaintiff contacted the police department section handling impounded vehicles and was told that only Officer Wheeler could release the “hold” on his car. Jordan was further informed he would be charged a towage fee and five dollars per day for storage of his vehicle, but he was not informed as to the location of his vehicle. Plaintiff claims to have made numerous attempts to contact Officer Wheeler, with no success.
Officer Wheeler testified that he allowed the “hold” to remain on plaintiff’s vehicle so that the burglary victim could be con *414 tacted to come view and identify items remaining in the car. After attempting for several weeks to contact the victim unsuccessfully, Officer Wheeler stated that he simply forgot about the hold on plaintiffs car. When contacted by plaintiffs attorney, Officer Wheeler had the hold released on May 7, 1985. On June 5, 1985, plaintiff obtained a release from the Baton Rouge City Police to retrieve his car but he first had to sign a document releasing the police from any claims.[1]
Meanwhile, on May 24, 1985, Dealer’s Wrecker Service obtained a permit to sell the automobile from the Department of Motor Vehicles.[2] When plaintiff arrived at Dealer’s on June 6, 1985, his automobile had been partially dismantled. Jordan paid Dealer’s $555.00 to obtain his car and was allowed to collect parts from Dealer’s junkyard to restore the car to an operable condition.
ASSIGNMENT OF ERROR NO. 1
It is well settled that a police officer may make a warrantless arrest when the facts and circumstances within the arresting officer’s knowledge and of which he has reasonably trustworthy information are sufficient in themselves to justify a man of average caution in the belief that the person to be arrested has committed an offense. State v. Gordon, 332 So.2d 262 (La.1976); State v. Pebworth, 251 La. 1063, 208 So.2d 530 (1968). A peace officer making an arrest is required to seize all weapons and incriminating articles which he may have about his person. La.Code Crim.P. art. 225. In order for the seizure of an item to be upheld as constitutional, there must be a showing of probable cause that the thing seized is somehow related to a particular crime, such as an instrumentality or fruit of the crime. State v. Nuccio, 454 So.2d 93, 99 (La.1984).
In the case sub judice, the police officers had probable cause to arrest the occupants of the 1970 Buick; witnesses to the burglary caught them in the act, pursued the get away car, observed them throw stolen items from the vehicle, and the police were able to find fruits of the crime remaining in the vehicle. Officer Wheeler testified the car was impounded because it was an instrumentality used in the burglary. Additionally, Officer Wheeler testified that it was necessary to impound the vehicle to ascertain whether items remaining in the vehicle were stolen. Thus, the seizure of plaintiff’s vehicle was proper.
Property seized in connection with a criminal proceeding which is not to be used as evidence or is no longer needed as evidence shall be returned to the owner. La. R.S. 15:41. Officer Wheeler testified that investigation into the alleged burglary ceased approximately two to three weeks following the incident since the victim could not be located. At that time, it was no longer reasonable to hold plaintiff’s vehicle; Officer Wheeler’s testimony reflects that his failure to do so was merely an oversight. Plaintiff’s car was seized February 24, 1985, and the hold was released May 7, 1985, a period of approximately ten weeks. Consequently, plaintiff was unreasonably denied access to his vehicle for a period of approximately seven weeks.[3] Al *415 though plaintiff’s car was released on May 7, 1985, he waited until June 6, 1985, to retrieve it.
At the time of this incident, plaintiff was a high school student and he was not employed. Plaintiff produced no testimony or evidence at trial, showing that he suffered any damages as a result of this seven week deprivation. Consequently, the trial court judgment dismissing the City of Baton Rouge is affirmed.
ASSIGNMENT OF ERROR NO. 2
Although the language of the release, reproduced herein, purports only to release the City of Baton Rouge, the effect of this document will be briefly addressed. A release or waiver has legal validity only if it possesses the essential elements of a contract, including consent. Whittington v. Sowela Technical Institute, 438 So.2d 236, 242 (La.App. 3d Cir.), writ denied, 443 So.2d 591 (La.1983). The consent of each party to a contract must be the result of a free and deliberate exercise of each party’s will. Whittington v. Sowela Technical Institute, 438 So.2d at 242. The circumstances surrounding the execution of the release in this case clearly show that Jordan did not freely consent to the document he signed. He was given no alternative but to sign the form in order to get his car back. As a result, the release is without effect.
ASSIGNMENT OF ERROR NO. 3
The owner of Dealer’s Wrecker Service, Harry Viccinelli, testified at trial that in compliance with La.R.S. 32:521, he obtained from the Department of Motor Vehicles, permission to sell plaintiff’s vehicle to cover storage fees, and that plaintiff’s payment of $555.00 to him was a purchase price for the sale of the vehicle by Viccinelli to Jordan. The trial court found that:
(T)he evidence indicates insofar as the wrecker service is concerned, that there were negotiations, that a certain sum was paid for the return of the vehicle, parts were given in return for same, and the plaintiff’s dissatisfaction with that was an afterthought
[[Image here]]
We find that as a matter of law, there was no compliance with La.R.S. 32:521, and that Dealer’s Wrecker Service was not entitled to sell plaintiff’s vehicle.
La.R.S. 32:521(D) provides as follows:
D. Whenever any such motor vehicle has been left in storage with any person engaged in the business of public storage of motor vehicles and the same has not been claimed for a period of ninety days or more, and no payment for the costs of storage has been made for that period, the person with whom the vehicle has been left for storage may dispose of it and collect the charges and costs of storage in the manner set forth hereinafter.
This provision contemplates that two conditions exist before the right to dispose of the vehicle under sub-sections (E), (F), or (G) becomes effective: 1) the vehicle is unclaimed for ninety days or more; and 2) *416 no payment of storage costs has been made for that time period. We believe a vehicle cannot be considered unclaimed during the time a police “hold” is in effect; therefore, calculation of the requisite time period under La.R.S. 32:521 cannot include the period of time a vehicle is under seizure by government officials.
Mr. Viccinelli of Dealer’s Wrecker Service acknowledged the fact that Dealer’s knew about the “hold” and that Dealer’s was under an obligation to maintain the car on behalf of the police department during the existence of the hold order. In effect, the city “claimed” the vehicle while the police exercised authority over it. Since ninety days did not pass from the day the “hold” was lifted until the permit to sell was obtained (May 7, 1985 until May 24, 1985), Dealer’s Wrecker Service was not entitled to apply to the Department of Motor Vehicles for a permit to sell, nor was it entitled to dispose of the vehicle. Thus, Dealer’s is liable to plaintiff for any damage he incurred as a result of its actions.
Plaintiff’s vehicle was a 1970 Buick that he purchased for $600.00 around August of 1984, to which plaintiff claims to have made some improvements. Plaintiff testified that when he picked up his car from Dealer’s, the tires had been replaced, the battery was dead, the shroud on the radiator was gone, and the interior was mildewed. Dealer’s provided him with parts to enable him to drive his car off the premises, but plaintiff testified the car did not run the same as before the impoundment. Plaintiff stated he subsequently sold the car for $50.00.[4] However, it is unclear from plaintiff’s testimony which of these items, with the exception of the missing tires, remained unremedied at the time he removed the car from the Dealer’s lot. Thus, plaintiff has only proved damages in the amount of $162.64.[5]
TOWING AND STORAGE FEES
Mr. Viccinelli stated that the amount he charged plaintiff for the return of his vehicle, $555.00, was the price for which he sold the vehicle to plaintiff. Having previously decided Dealer’s had no right to sell the vehicle, we find that plaintiff is entitled to recover the amount he paid to “buy” back his car less any storage fees he legitimately owed Dealer’s.
La.R.S. 32:392 allows the collection of expenses associated with impoundment of a motor vehicle operated in violation of the Louisiana Highway Regulatory Act, La.R.S. 32:1 et seq., from the owner or driver of the vehicle:
A. Upon discovery of any vehicle in any manner operated in violation of this Chapter, the vehicle may be impounded forthwith by any state policeman, any authorized representative of the commissioner, any peace officer, or weights and standards police officer of the department ... and in either case shall be detained or unloaded at the expense and responsibility of the owner or driver.
However, plaintiff’s car was not impounded for traffic violations, but rather, as evidence of a burglary he allegedly committed. The only means of collecting costs incurred in the prosecution of a criminal offense is under La.Code Crim.P. art. 887, which provides:
A. A defendant who is convicted of an offense or is the person owing a duty of support in a support proceeding shall be liable for all costs of the prosecution or proceeding, whether or not costs are assessed by the court, and such costs are recoverable by the party or parties who incurred the expense. However, such defendant or person shall not be liable for costSvif acquitted or if the prosecution or proceeding is dismissed. In addition, any judge of a district court, parish court, city court, traffic court, juvenile court, or family court within the state shall be. authorized to suspend court costs.
*417 In the instant case, the burglary prosecution against Larry Jordan was dismissed, according to his testimony at trial; that testimony was undisputed. We must conclude that plaintiff is not responsible for the expenses incurred to impound and preserve this evidence; therefore, Dealer’s Wrecker Service was not entitled to charge plaintiff towing and storage fees for the period plaintiffs car was under a hold order.
For the time period following the release of the hold order, May 8, 1985 through June 5, 1985, we must determine whether plaintiff impliedly agreed to the imposition of the storage fees by his failure to claim his vehicle. Consent can result from silence when combined with other facts or acts so as to imply or indicate consent unequivocally. La.Civ.Code art. 1942; Illinois Central Gulf Railroad Co. v. International Harvester Co., 368 So.2d 1009 (La.1979). Where the law does not expressly create a legal presumption of consent from certain facts, it is left to the discretion of the judge to determine if consent is to be implied from the particular circumstances of the case. Illinois Central Gulf Railroad Co. v. International Harvester Co., 368 So.2d at 1012. As noted herein, the knowledge of plaintiffs attorney, in this case, as to the date the hold was released can be imputed to him. Additionally, plaintiff was informed by the police impound section of the $5.00 per day storage rate charged. The circumstances existing in this case show that plaintiff had knowledge he could retrieve his vehicle any time after May 7, 1985, and that he knew the consequences of his failure to do so; therefore, plaintiff is responsible for storage fees imposed from May 8, 1985 through June 5, 1985. At the rate of $5.00 per day, this amounts to $145.00. Since Dealer’s Wrecker Service collected $555.00 from plaintiff, he is entitled to recover $410.00 of that fee.
For the reasons assigned in the foregoing opinion, that portion of the trial court dismissing plaintiffs claims against the defendant, City of Baton Rouge, is affirmed. That portion of the trial court judgment dismissing plaintiff’s claims against the defendant, Dealer’s Wrecker Service, is reversed, and judgment is entered herein in favor of Larry Jordan in the amount of $572.64; costs are to be paid by defendant, Dealer’s Wrecker Service.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.

.The form plaintiff was required to sign contained the following language:
RELEASE and ACKNOWLEDGEMENT OF RECEIPT
I hereby acknowledge that the Baton Rouge City Police Department is in legal possession of the vehicle described on this folder; that in consideration of the Police Department releasing to him or his company the vehicle, he releases any and all claims or actions he or his company may have against the City of Baton Rouge for any charges, expenses, costs, claims or demands whatsoever arising from and in connection with the City of Baton Rouge having taken possession of said vehicle and that he or his company further agrees and promises to hold the City of Baton Rouge harmless against any claims, actions, suits, damages, charges, expenses.

. Gwyndolyn Alford from the Office of Motor Vehicles testified a "permit to sell" was issued on May 24, 1985, to Dealer’s Wrecker Service. In addition, she indicated that title in the vehicle was changed showing Dealer's Wrecker Service as owner.

. The testimony at trial was not dispositive regarding whether plaintiff was notified by mail of the release of his vehicle on May 7, 1985. *415 However, on either May 7, 1985 or shortly prior to that date, plaintiff’s attorney, Mr. Don Johnson, spoke with Officer Wheeler and arranged the release of plaintiffs vehicle as reflected by the following dialogue at trial between Mr. Johnson and Officer Wheeler:
Q. Do you recall a conversation with myself on the front street here in front of the municipal building whereby I notified you that your hold order was still on Larry Jordan’s vehicle and there was no need for it? Do you recall' such a conversation with myself?
A. Yes.
Q. And that conversation happened one morning in front of this governmental complex?
A. Yes, it did.
Q. And as a result of that conversation did you inform me that you would immediately go to the impounded vehicle section and remove the hold order off of Mr. Jordan’s vehicle?
A. Yes, I did.
Q. Did you in fact go over that morning and do that?
A. I don’t recall if it was that morning or not. It was right thereafter, though.
Since the knowledge of an attorney is imputed to the client, plaintiff either knew or should have known of the date on which his car was released. State v. Salgologo, 491 So.2d 361, 363 n. 4 (La.1986); Richardson v. Stan Weber & Associates, Inc., 400 So.2d 1196, 1198 (La.App. 1st Cir.1981); Wiltz v. Home Building & Loan Ass’n, 24 So.2d 204, 207 (La.App. 1st Cir.1945).

. Plaintiff testified he sold the car around October 1, 1985.

. Plaintiff introduced a bill of sale dated February 22,1985, showing the sale of tires to him for $162.64, just two days prior to the time his car was impounded. He testified that those tires were not on his car when he recovered it from Dealer’s.