On October 24, 1942, defendant sold to plaintiff a certain piece of land under the following description:
"Lying, being and situated in Ward Four (4) Parish of East Feliciana, State of Louisiana, a certain piece or parcel of land containing Twelve (12) acres, more or less, bounded on the North by Shady Grove Public Road, running along said road west three *Page 787 
acres from Ivey James' N.W. Corner as a starting point; thence east by Ivey James; South by vendor; west by vendor, and being a part of the same property acquired by Vendor from R.E. Thompson, September 4th, 1937, as per act in Book R-2, folio 232, records of East Feliciana Parish, Louisiana." for the price and consideration of $300, payable as follows: "Fifty Dollars, cash, in hand paid, and the balance say: Two Hundred and Fifty dollars, in certain promissory note of even date due and payable in 10 months installments for $25.00 each, * * * "
On January 9, 1945, plaintiff brought this suit, alleging that on November 29, 1944, defendant had erected a fence upon the said property, contending that the said property purchased by him was fully enclosed by fences, and that the construction or erection of said fence tended to cut off some two acres of his property and was a slander of his property, entitling him to damages, and that defendant should be ordered to remove such fence off of his property. The prayer of his petition is that defendant be ordered to either disclaim any title whatever to the said property or to assert such rights as he might have against said property and that there be judgment in his favor ordering defendant to remove, the fence constructed by him and awarding damages.
In answer, defendant admits the sale to plaintiff, admits the construction of the fence or fences, but avers that the fence or fences do not encroach upon plaintiff's property, he having delivered or surrendered unto plaintiff the twelve acres of land sold to him fronting on the Shady Grove public road by three acres' front and by four acres in depth, and that he has not disturbed in any way plaintiff's possession of the property sold to him.
On trial of the issues, the trial judge rendered a judgment in favor of plaintiff, recognizing plaintiff to be the owner of all of the land "which lies between the old wire fences" and ordering the defendant to remove such fence or fences erected by him on November 29, 1944, confirming plaintiff to be the owner of the "property bounded on the North by old wire fence; East by old wire fence; South by old wire fence; and West by old wire fence."
From this judgment, defendant prosecutes this appeal.
It is the contention of the plaintiff that he purchased a certain tract of land all to itself, fronting on the Shady Grove Public Road, being bounded on one side by the said road, and being enclosed by fence. lines on the other three sides, containing twelve acres, more or less. It is the contention of the defendant that he sold to plaintiff a certain tract of land having a front of three acres on the Shady Grove Public road to contain twelve acres only, or in other words, a tract of land having a front on the said public road of three acres by a depth of four acres, and that the fences built by him do not encroach on the property sold by him to plaintiff.
It is an admitted fact that the Shady Grove public road runs north and south and that the property sought to be transferred and that of Ivey James are to the west thereof, and that the property of Ivey James is to the south of the property described in the deed, thus making the property bounded on the east by the said public road and south by Ivey James rather than bounded on the North by the public road and East by Ivey James, thus making the remainder of the boundaries to be North by vendor and West by vendor. It is also admitted that the starting point should be the northeast corner of Ivey James' property on the Shady Grove road to run three acres in a northerly direction along said road.
The only question then to be decided is whether the sale was one by measure or one by metes and bounds.
It appears that there is a plantation road intersecting the Shady Grove road 654 feet north of the northeast corner of Ivey James' property running in a westerly direction, which has a fence on the south side. At a point 1144 feet from the intersection of the two roads, there is a fence running in a southwesterly direction a distance of some 760 feet to a point 1252 feet from the north-east corner of the James property. The acreage within this enclosure is 19.8 acres, 7.8 acres or 65% more than the acreage called for by the deed.
Defendant built a fence starting from a point on the Shady Grove road 634 feet, 3.+ acres, north of the northeast corner of Ivey James' property, being some 15 or 20 feet south of the south fence of the plantation road, due west 835 feet, 4.+ acres, being some 60 feet south of the south fence of the plantation road, thence due south 632 *Page 788 
feet, 3.+ acres, to Ivey James' property at a point 838 feet, 4+ acres, from the north-east corner of the James property, the point of beginning. The acreage within this enclosure is 12.15+ acres, .15+ acre more than that called for by the deed.
The plaintiff testified that he sought defendant to buy some of defendant's property in another part of defendant's plantation. Defendant represented to him he would sell plaintiff a tract of land of approximately twelve acres which was by itself, fronting on the Shady Grove public road and enclosed by fences on the other three sides. Upon visit of the premises with the defendant, he agreed to purchase the same on the terms and conditions expressed in the deed. The land was enclosed by fences all around. Defendant and plaintiff measured with a stick the land all the way around to a point on the north side of the property, where defendant showed him both the northwest and southwest corner of the tract, defendant representing to him that the tract contained 12 3/4 acres, but would sell the same to him on the basis of twelve acres. Plaintiff, on that day, inspected the fences in the presence of defendant, and purchased the property enclosed in the fences, without regard to the acreage therein contained; that the fences constructed by the defendant cuts him off of about four acres from the tract purchased by him. Plaintiff further testified that he did not know whether he had twelve acres enclosed by the fences constructed by defendant. He insists that he and defendant measured from corner to corner and that the deed will show how much front on the Shady Grove road he had. However, he admits that defendant was to sell him twelve acres for three hundred dollars. He further admits that the property defendant was to sell and did sell him had a front of three acres on the Shady Grove road. He admits being present when the fences were erected, but did not consent to their erection. He admits that he purchased such property which was bounded on the cast by the Shady Grove road, on the north by defendant, on the west by defendant, and south by James.
The defendant testified that plaintiff sought him to sell to plaintiff a tract of land, particularly in that neighborhood. He agreed to sell plaintiff any amount of land in that locality for $25.00 per acre; they agreed on twelve acres, and so they measured three acres along the Shady Grove road, starting from the northeast corner of the James property, informing plaintiff that he would have a depth of four acres. The deed was passed. Later on, on account of plaintiff failing to build his fences, defendant's cattle would get out of his pasture and would go astray. In order to keep his cattle from straying, he, on November 29, 1944, constructed fences along the property which he had sold to plaintiff, some five or six feet from the said property, delivering to plaintiff his twelve acres, or more, in order that his fence line would be well on his own property, and not encroaching upon plaintiff's property. In setting out plaintiff's property, he started at the north-east corner of the James property measuring three acres 7.87 feet to the north following the Shady Grove road, some sixteen feet to the south of the plantation road, thence west, parallel to James' property, 4.16 acres, thence south, parallel to Shady Grove road three acres 5.87 feet, and thence east 4 acres 3.16 feet, along the north line of James' property, thus making twelve acres plus. That the acreage as given by plaintiff would be 19.8 acres which he would not have sold for the sum of $300.00 as the understanding between them was that plaintiff was to pay $25.00 per acre for the land purchased by him. That in measuring the two tracts of land, he used a fifty foot tape measure, with assistance. He is positive that he had no understanding with plaintiff that he was selling plaintiff all of the land enclosed within the fences, regardless of acreage, for $300, and that he only sold plaintiff twelve acres, having a front of 3 acres on the Shady Grove road, bounded on the cast by the Shady Grove road, on the north by himself, west by himself and on the south by Ivey James. He is specific and definite that the three acres fronting the Shady Grove road was measured by himself, in the presence of plaintiff, and plaintiff had knowledge of the frontage and its extent on the Shady Grove road, and that no other corners were shown to plaintiff at that time.
[1] Article 2474 of our Civil Code provides that the seller is bound to explain himself clearly respecting the extent of his obligations, any obscure or ambiguous clause is construed against him. The only abscure or ambiguous clauses contained in the original act of sale were the starting point on the Shady Grove road from which the three acres fronting the said road were Lo be measured, and the other boundaries. the deed, as reformed by the contracting *Page 789 
parties, calls for a tract of land containing twelve acres, more or less, bounded on the east by the Shady Grove road, having a front thereon of three acres, running north from the northeast corner of Ivey James' property, thereafter being bounded on the North by vendor, West by vendor and South by Ivey James. Thus the article supra has no application to the case at bar.
[2] One of the obligations of the seller is that of delivery. Delivery of immovables is considered as accompanying the public act, which transfers the property. The only other evidence in this case is the testimony of plaintiff wherein he states that he improved the property by the building of a house thereon fronting the Shady Grove Toad and within the frontage of the three acres as provided for in the deed. He does not state that he took possession or cultivated any portion of the property, particularly that which lies to the north or west of the line of fences built or constructed by the defendant, prior to their construction on November 29, 1944, although he had purchased the property almost two years prior to the construction of the fences by defendant.
Under Title VII, of Sale, Chapter Six, of the obligations of the Seller, of our Civil Code, Article 2491, provides that the seller is bound to deliver the full extent of the premises, as specified in the contract, under the modifications thereafter expressed. Article 2492, provides that if the sale of an immovable has been made with indication of the extent of the premises at the rate of so much per measure, the seller is obliged to deliver to the buyer, if he requires it, the quantity mentioned in the contract, and if he cannot conveniently do it, or if the buyer does not require it, the seller is obliged to suffer a diminution proportionate to the price. Article 2493 provides that if, on the other hand, there exists an extent of more than what is specified in the contract, the buyer has a right, either to give the supplement of the price, or to recede from the contract, should the overplus be upwards of a twentieth part of the extent which is declared.
In our case, the seller has attempted, by the construction of fences to the north and west, to deliver the property sold to the extent of 12+ acres as called for by the deed. The plaintiff bases his claim to a tract of 19.8 acres, or an overplus of 65%, or 7.8 acres, as called for by the deed by virtue of the words "more or less," Contending that the deed was a sale per aversionem, under Article, 2495, which provides that there can be neither increase nor diminution of price on account of disagreement in measure, when the object is designated by the adjoining tenements, and sold from boundary to boundary.
[3] In order to constitute a sale per aversionem, there must be certain limits or a distinct object described as a field inclosed or an island. In our case, there are only two specific boundaries given, that is, a front of three acres on the Shady Grove road on the east and the property of Ivey James on the south. The boundaries on the north and west are only specific in that the vendor adjoins the property on these sides. The Vendor has a large plantation and owns property extending for more than a mile north and west of the property transferred. We are therefore of the opinion that the sale is not one of per aversionem. To hold otherwise, we would have to hold that the property was bounded on the north by the fence on the south side of the plantation road and on the west by another fence running south from the plantation road, rather than by vendor on the north and west as called for by the deed as corrected. These fences are "monuments" which could not possibly have been misinterpreted and yet they are not mentioned at all in the description of the property found in the deed nor a satisfactory explanation given for their absence.
In his testimony, plaintiff admits that he was buying a tract of land having a front of three acres on the Shady Grove road, to contain twelve acres, "more or less," and that the deed was read to him prior to his signing the same. At the time that the deed was read to him, he should have insisted that the proper description of the property be inserted, such as fronting on and being bounded on the East by the Shady Grove road, on the North by the plantation road, on the West by an old fence running north and south from the plantation road to Ivey James' property and on the South by the property of Ivey James. He knew or should have known that the quotient of three into twelve is four, and that the deed called for a three acres' front, thus making a depth of four acres.
Plaintiff contends that the use of the term "more or less" in the deed evidenced the intention of the defendant to sell him a *Page 790 
specific tract of land bounded on the east by the Shady Grove road, on the north by the plantation road, on the west by an old fence and on the south by the property of Ivey James. In discussing this, contention, it is necessary to ascertain the meaning attached to the words "more or less", used in the deed conveying realty, and to construe the provisions of the deed in connection therewith.
[4] The words "more or less" are words of safety and precaution and when used in a deed, are intended to cover some slight or unimportant inaccuracy in the frontage, depth or quantity in the land conveyed. 18 C.J. § 262, page 289; 26 C.J.S., Deeds, § 102; Lawrence v. Young, 144 La. 1, 80 So. 18.
The term "more or, less" ordinarily means "about" when used in a deed. 18 C.J. § 262, page 289; 26 C.J.S., Deeds, § 102. The same thing may, be said concerning the terms "a little more than", "not quite", "not more than," or "approximately." All are terms of safety and precaution. The use of any of these terms implies that there is no considerable difference in the measurements or the quantity of land sold. They are often introduced into a description practically without effect. Pierce v. Lefort, 197 La. 1, 200 So. 801.
The interpretation or definition of the words "more or less," supra, by analogy, fits in with our Civil Code Article 2493, supra, in that the Article provides that when the overplus is upwards of a twentieth part of the extent than what is specified in the contract, the purchaser has the right either to give the supplement of the price, or to recede from the contract.
Our conclusion is that the words "more or less" do not give any comfort to plaintiff, nor do they give any more property to plaintiff than that which he purchased. In this case the overplus amounts to 65%. Plaintiff admits on page 8 of the transcript of testimony that the agreement between himself and defendant was that defendant was to sell him twelve acres for three hundred dollars, which is at the rate of twenty-five dollars per acre. It stands unreasonable to believe that defendant would have sold 19.8 acres for $300 when plaintiff himself admits that he was only purchasing 12 acres for $300. The plaintiff has not seen fit to give the supplement of the price, but to the contrary, is seeking to retain the overplus without any extra payment therefor.
[5] Our conclusion therefore is that the sale of the property in question is one by measure and not one by metes and bounds, notwithstanding the phrase "more or less." The evidence preponderates in favor of defendant that he delivered to plaintiff on November 29, 1944, the property as called for by the deed.
For these reasons, the judgment appealed from is reversed, and plaintiffs suit is dismissed at his costs in both courts.