CUTRER, Judge.
This is a suit by Gene Kile for the specific performance of a purchase agreement in which Kile agreed to sell and Louisiana Limestone Aggregates, Inc. (LLA) agreed to buy a certain tract of land in Calcasieu Parish. LLA reconvened for sums expended to clear this tract. After trial on the merits, the trial court dismissed both the main demand and the reconventional demand. Both parties appealed.
The issues presented on appeal are: (1) Whether this was an agreement to sell “per *980 aversionem” and enforceable even though there was less land than was contemplated by the parties; (2) whether the agreement to sell can be set aside due to an error of fact as to the area of land contained in the description of the property; (3) whether Kile verbally released LLA from any obligation under the purchase agreement; and (4) whether the reconventional demand by LLA, for funds expended for clearing the land, should be allowed.
Louisiana Limestone Aggregates, Inc. is in the business of storing, distributing and selling limestone products. LLA desired to obtain a tract of land fronting on the Calca-sieu River in the Lake Charles area in order to unload limestone from barges and to store the limestone until it was sold and shipped to buyers. During 1976, LLA entered into negotiations for the purchase of such a tract with Gene Kile.
The record reflects that during the negotiations between Kile and the representatives of LLA, Kile' was informed that LLA required at least three acres to serve its purpose. Kile told representatives of LLA that the tract contained approximately three acres. During these negotiations, the representatives of LLA, including James Moore, Vice-President, and Joseph E. Le-Blanc, Executive Vice-President, viewed the property, both by visiting the site and by viewing it from an airplane. The boundaries were pointed out to the representatives but the exact dimensions of same were not ascertained.
The negotiations resulted in the signing of a purchase agreement on August 10, 1976. On the same day, Kile gave written consent to LLA to clear the property and take other steps deemed necessary by LLA to prepare the property for occupancy.
LLA employed a construction company to clear the property. James Moore, Vice President of LLA, testified that shortly after the clearing had been completed, he viewed the property and he became concerned that the property did not contain enough area to accommodate their operation. He communicated this concern to Kile and asked that Kile furnish a survey. Kile furnished the survey to LLA in late November 1976. As a result of the survey, Moore found that the property contained less than three acres. The survey indicated the tract was approximately two acres in size.
Later, Kile spoke with Moore to see whether LLA was going to buy the property. At this point, Moore informed Kile that LLA would not buy the property. Kile responded by telling Moore that if LLA didn’t buy, he would have to find another buyer. (These discussions apparently took place in late 1976 or early 1977.)
No further communication occurred between LLA and Kile until late April 1977. In a letter received by LLA on April 25, 1977, Kile demanded that representatives of LLA appear on May 3,1977 at the offices of Kile’s attorney to consummate the sale. No one representing LLA appeared and on May 4, 1977, suit was filed.
The trial judge ruled that the vendor’s noncompliance with the following paragraph of the purchase agreement rendered the agreement null and void:
“Vendor shall deliver a valid legal and merchantable title to vendee, and his inability to deliver same within the time stipulated herein [60 days] shall render this contract null and void, and both parties shall be relieved of any further obligations hereunder.”
The trial judge stated that this portion of the agreement created a suspensive condition, thus is potestative in nature, not purely potestative, but “simply” potestative which required the vendor “to have delivered a valid title within 60 days or be faced with a wholly unenforceable contract.”
The trial judge erred in classifying this contract provision as potestative. LSA-C.C. Art. 2024 provides:
“The potestative condition is that which makes the execution of the agreement depend on an event which it is in the power of the one or the other of the contradicting parties to bring about or to hinder.”
*981 If a party is required by the contract to do an act, the requirement is not within his power to bring the event about. The party is obligated to do the thing promised. In the present case, Kile was required to deliver a valid title. In the event that Kile could-not deliver valid title to the property, the contract would then be null and void. The requirement to deliver a valid title to the property is not a potestative condition. The provision deals with circumstances beyond the control of the vendor.
Kile contends that the agreement should be enforced as a sales “per aversionem” (from boundary to boundary) even though the quantity of the property was less than originally contemplated by the parties.
As opposed to this contention, LLA contends that the description of the property in the agreement did not meet the requirements of a “per aversionem” sale and thus, the lack of quantity of land presented an error of fact which would render the agreement void.
The doctrine of “per aversionem” sale of immovables emanates from the provisions of LSA-C.C. Art. 2495, which provides as follows:
“There can be neither increase nor diminution of price on account of disagreement in measure, when the object is designated by the adjoining tenements, and sold from boundary to boundary.”
This article becomes effective and applies when the sale is made from “one fixed boundary to another fixed boundary.” It is not essential that the boundaries designated in the sales agreement be “visible” in order for the sale to be classified as “per aversionem.” To constitute a sale “per av-ersionem” it is only necessary that the property be identified as being from one “fixed boundary” to another “fixed boundary” and that it was the intent of the parties to convey the land between those boundaries. Cornish v. Kinder Canal Company, 267 So.2d 625 (La.App. 3rd Cir. 1972), writs ref’d, 263 La. 624, 268 So.2d 679 (1972), 263 La. 800, 269 So.2d 248 (1972).
In Cornish, the property description reflected a triangular shaped parcel of land “bounded on the north and east by section lines and on the southwest by a canal.” This court held that the description showing a section line as a boundary, whether its location is or is not marked by visible monuments, must be construed as showing a fixed boundary.
This court, in Cornish, cited other cases illustrating the judicial interpretation of fixed boundaries as follows:
“In Motichek v. Perriloux, 231 La. 849, 93 So.2d 190 (1957), the property conveyed was described as being six acres of land in a designated section, being ‘bounded on the North by Fifty foot road, South and West by Section lines of Section 14, and 44, East by Lot of John Thomas, or balance of Lot 16.’ Of this description our Supreme Court said:
‘. . . it is a sale per aversionem, or between fixed boundaries, even though it specifies that six acres of land are conveyed. The description in this deed sets forth that the six acres of land conveyed are “bounded on the North by Fifty foot road, South and West by Section lines of Section 14 and 44, East by Lot of John Thomas, or balance of Lot 16”. This clearly evinces the intention of the vendor to convey all of the property owned by him within the given boundaries and, therefore, falls within the provisions of Article 854 of the Civil Code.’ . . . ”
“In Blevins v. Manufacturers Record Publishing Company, 235 La. 708, 105 So.2d 392 (1958), the same court held a sale to be one ‘per aversionem’ where the property conveyed was described as follows:
‘That portion of lot or Fractional section 40 lying West of the section line between Sections seven (7) and eight (8) above, produced and a line drawn West from a point on the center line of the Morgan’s Louisiana & Texas R. R. Co., said point being 600 feet North of the intersection of said Railroad with Bayou Saut D’Ours . . . and containing four hundred and forty-two (442) acres, more or less . . .
*982 The description of the property in the purchase agreement at hand reads as follows:
“A certain tract or parcel of land, situated in LOT FOUR (4) of said Section 36, Township 9 South, Range 9 West, Louisiana Meridian, bounded East by the Calca-sieu River, South by right-of-way of Kansas City Southern Railroad, West by Westlake Avenue, and North by tract originally conveyed to W. F. Gray as per act recorded in Book T of Conveyances, page 366, records of Calcasieu Parish, Louisiana, less and except that certain .26 acre tract sold by William Lester Freeman to the Board of Commissioners of the Lake Charles Harbor and' Terminal District as recorded in Conveyance Book 791, page 575, bearing Clerk File No. 855709, and the South 30' of LOT EIGHT (8) of BLOCK ONE (1) of RIVERSIDE ADDITION in the North part of Northwest Vi of Northwest Vi of SECTION THIRTY SIX (36), Township 9 South, Range 9 West.”
The boundaries of the property in question are “fixed boundaries.” The property is bounded on one side by a designated street, a second side by Calcasieu River, a third side by a designated railroad and the fourth side is bounded by the property of a W. F. Gray. The officials of LLA viewed the property by walking along the railroad. They also viewed the property from the air.
The above description, when considered along with the “per aversionem” descriptions set out in Cornish, leads us to the conclusion that the agreement relates to a “per aversionem” sale.
We distinguish the case of Harries v. Harang, 23 So.2d 786 (La.App. 1st Cir. 1945), cited by LLA. In Harries, the court determined the description in question was not sufficiently specific in describing boundaries on two sides and thus the sale in question was not per aversionem. There was no way of definitely determining the actual boundary on those two sides. (It should be noted that the court found that one boundary described as “the property of Ivey James on the south” was specific.) The boundary in the present case is clearly specific and determinative, and within the guidelines established by the cases cited above.
We also distinguish Office Center, Inc. v. Tanenbaum, 225 So.2d 740 (La.App. 3rd Cir. 1969), cited by LLA. Office Center, Inc. involved a mistake by the parties as to the boundaries when the visible boundaries were mistaken for the actual boundaries in the deed. The court refused to apply the rule of Art. 2495 since a portion of property was not included that the vendee believed he was buying. In the present case, there is no dispute as to the purchaser not getting a portion of property he believed he was buying. The description in the purchase agreement involved in this case accurately described the property that LLA believed they were agreeing to purchase.
Having found this to be a sale “per aver-sionem,” we must next answer the question as to what is the effect of a “per aversion-em” sale where both parties were mistaken as to the quantity of the land involved.
The Supreme Court of this state, in the early case of Saulet v. Trepagnier, 2 Rob. 357 (La.1842), established the effect of a “per aversionem” sale where it held as follows:
“When a sale is made with reference to known and definite boundaries, nothing more is intended to be conveyed than what is contained between the boundaries, and a deficiency in quantity does not entitle the purchaser to demand either a rescission or a diminution of the price.” (Emphasis added)
This ruling has been consistently followed by our courts. In Fitzgerald v. Hyland, 199 La. 381, 6 So.2d 321 (1942), the jurisprudence was discussed in detail and the court held as follows:
“. . .In the absence of fraud or concealment, the rule established by the jurisprudence of this state is that, in sales where specific boundaries are given or where the sale includes property from one fixed boundary to another, the sale is per aversionem, and the seller conveys, *983 and the buyer gets, all the property within the boundaries given, whether it be more or less than the measure mentioned in the contract, . . . .” (Emphasis added)
The rationale of this rule is that the parties to such sales intended to contract with reference to certain boundaries rather than the quantity of the property. Fitzgerald v. Hyland, supra; Adams v. Spillman, 290 So.2d 726 (La.App. 1st Cir. 1974), writs ref’d, 293 So.2d 191 (La.1974); Cornish v. Kinder Canal Company, supra; and Boyce v. Cage, 7 La.Ann. 672 (1852). Under these cases, the particular piece of property is presumed to be the principal cause of the contract and boundaries prevail over a quantity erroneously given.
 We conclude that the description at hand is “per aversionem,” as being within “fixed boundaries.” LLA is obligated to purchase the property so described even though the parties to the agreement were under the impression that the area contained three acres instead of approximately two acres as reflected by the survey. LLA’s contention that the deficiency in area was an error of fact that would justify the invalidation of the agreement, must yield to the clear law of “per aversionem.”
Louisiana Limestone Aggregates, Inc. argues that the purchase agreement was orally terminated. After LLA became aware of the fact that the property was smaller than expected, Kile and Moore conversed by telephone regarding the purchase. During this conversation, Moore informed Kile that he did not intend to purchase because of the deficiency of size. Kile responded, in effect, that if LLA did not purchase the property he would sell it to another buyer. LLA contends that Kile’s statement was understood by LLA to be a termination of the agreement. LLA argues that the evidence supports this understanding since several months elapsed between this conversation and a letter from Kile demanding performance. Kile’s position is that the statement that he would sell to another buyer was intended to entice LLA to buy the property and it was not intended to revoke the agreement.
Under the circumstances, LLA could not properly take the statement by Kile as a termination of the agreement. The informal or casual nature of the conversation indicates a lack of serious intent.[1] The fact that Kile said he would sell to another buyer is not a statement of such a nature as to constitute a termination of the obligation by LLA to purchase, nor could LLA reasonably interpret the statement as such.
The dismissal of the reconventional demand shall be affirmed as having become moot.
We hold that Kile is entitled to specific performance of the purchase agreement.
For the above reasons, the judgment of the trial court is affirmed insofar as it dismisses the reconventional demand; and reversed, annulled and set aside insofar as it dismisses the main demand.
It is therefore ordered, adjudged and decreed that there be judgment in favor of Gene Kile and against Louisiana Limestone Aggregates, Inc., recognizing the purchase agreement between Gene Kile and Louisiana Limestone Aggregates, Inc., dated August 10, 1976, to be legal and binding, and accordingly, it is ordered that Louisiana Limestone Aggregates, Inc. comply with the provisions of the purchase agreement within 30 days after the date this judgment becomes final. All costs of this appeal are assessed against defendant-appellee.
AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.

. LSA-C.C. Art. 1815 provides:
“A positive promise, that, from the manner in which it is made, shows that there was no serious intent to contract, creates no obligation.”