## STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 07-1316

**LONG-FORK, L.L.C.**

**VERSUS**

**PETITE RIVIERE, L.L.C., ET AL.**

**\*\*\*\*\*\*\*\*\*\***
APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 2005-7461-B
HONORABLE WILLIAM J. BENNETT, PRESIDING
**\*\*\*\*\*\*\*\*\*\***

## SYLVIA R. COOKS
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, Oswald A. Decuir, and Michael G. Sullivan, Judges.

**AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.**

**David LaFargue**
**P.O. Box 277**
**313 N. Main Street**
**Marksville, LA 71351**
**(318) 253-7521**
**COUNSEL FOR PLAINTIFF-APPELLEE:**
        **Long-Fork, L.L.C.**

**William C. Shockey, Jr.**
**Shockey & Associates, APLC**
**10114 Jefferson Highway**
**Baton Rouge, LA  70809**
**(225) 291-7500**
**COUNSEL FOR DEFENDANT-APPELLANT:**
        **Petite Riviere, L.L.C.**

**Rodney M. Rabalais**
**Law Offices of Rodney Rabalais**
**122 East Mark Street**
**P.O. Box 447**
**Marksville, LA  70351**
**(318) 253-4622**
**COUNSEL FOR DEFENDANT-APPELLANT:**
        **R. Dugas Family, L.L.C.**

**Randall B. Keiser**
**Keiser Law Firm, P.L.C.**
**P.O. Box 12358**
**Alexandria, LA  71315-2358**
**(318) 443-6168**
**COUNSEL FOR DEFENDANT:**
        **Brown Realty Company of Rayville, Inc.**

**COOKS, Judge.**

The Plaintiff, Long-Fork, L.L.C. (Long-Fork), brought this action seeking to compel the buyer of certain property to supplement the purchase price or to return the property. On October 31, 2003, an Agreement to Purchase and Sell Real Estate (Purchase Agreement) was executed between Long-Fork and Petite Riviere, L.L.C. involving a piece of property located in Avoyelles Parish. The property description in the Purchase Agreement provided "said tract estimated to be 2,759 acres more or less and generally described as the South Farm, less seventy-seven acres north of the center line of Little River." The Purchase Agreement set forth a price of $1,050.00 per acre and provided that the "price per acre shall control in the event of a discrepancy between the price stated below and the price as determined by the number of acres conveyed, . . ." The Purchase Agreement also provided "that a survey would be performed, by a surveyor mutually agreeable to Vendor and Vendee, of the tract of land . . . . in order that the Vendor and Vendee may more accurately calculate the acreage of the property to be conveyed." The Purchase Agreement also provided for the consideration of the sale to be $2,896,950.00, which reflected the $1,050.00 per acre price for 2,759 acres. The Purchase Agreement further provided that the act transferring title was to be executed on or before December 31, 2003. A provision that "the Act of Transfer of the property will include the terms and provisions of this contract" was included.

When the Act of Cash Sale was executed on February 13, 2004, the property was described as "comprising approximately 2759 [acres] more or less." The Act of Cash Sale did not contain any clause with respect to the price per acre controlling as was included in the Purchase Agreement. The sales price was $2,896,950.00. Brown Realty Company of Rayville, Inc. was Long-Fork's realtor for the transaction. The

property was subsequently transferred by exchange from Petite Riviere to R. Dugas Family, L.L.C. Six months after the sale it was discovered by Long-Fork that the property sold encompassed more acres (approximately 215) than originally thought.

On February 11, 2005, Long-Fork filed a petition seeking a supplemental increase in the purchase price to reflect the greater number of acres. Named as Defendants were Petite Riviere and R. Dugas Family. Brown Realty was also named as a defendant by Long-Fork. However, the allegations against Brown Realty were such that Long-Fork only sought recovery from Brown Realty if Petite Riviere and R. Dugas Family were not liable. The petition was answered by Petite Riviere and R. Dugas Family, who also filed a Motion for Summary Judgment. Long-Fork filed its own Motion for Summary Judgment, as did Brown Realty. Following several depositions and supplemental memoranda, the matter came before the trial court on the Motions for Summary Judgment filed by each party. After a hearing on the matter, the trial court took the matter under advisement.

The trial court rendered judgment, denying the Motion for Summary Judgment filed by Petite Riviere and R. Dugas Family and granting Long-Fork's Motion for Summary Judgment. Judgment was rendered in favor of Long-Fork in the amount of $226,485.00 with interest from the date of judicial demand. Long-Fork's request for attorney fees was denied. A judgment granting Brown Realty's summary judgment was also signed.[1] Defendants filed a Motion for New Trial, contending no supplemental purchase price was due. Long-Fork also filed a Motion for New Trial seeking attorney fees. The trial court denied Defendants' motion and granted Long-Fork's motion, awarding attorney fees in the amount of $22,620.00. This appeal

---

[1] The final judgment signed by the trial court granting Brown Realty's motion for summary judgment was not appealed by any party. Despite that, Brown Realty was issued a briefing deadline and subsequent extension by this court. That was in error, as the judgment granting Brown Realty's summary judgment motion and dismissing it from this lawsuit is final.

followed, wherein Defendants contend the trial court erred in concluding that La.Civ.Code art. 2495 was inapplicable, that La.Civ.Code art. 2498 applied, and allowing for a supplement of the purchase price and attorney fees. Long-Fork answered the appeal, and argues the trial court erred in ruling that Defendants did not violate the right of first refusal granted to Long-Fork in the Act of Cash Sale.

## ANALYSIS

As noted by all the parties and the trial court, the material facts in this case have been stipulated to and, as the trial court stated, "the dispute appears to be application of applicable law." When there is an appellate review of questions of law, we must simply determine whether the trial court was legally correct in its application of the law. *Foster v. ConAgra Poultry Co.*, 95-793 (La.App. 3 Cir. 2/14/96), 670 So.2d 471, *writ denied*, 96-645 (La.4/26/96), 672 So.2d 674. If it is determined the trial court made a reversible error of law, the appellate court will review the record *de novo* and render a judgment on the merits. *Lawson v. White*, 01-1173 (La.App. 3 Cir. 2/6/02), 815 So.2d 958, *writ denied*, 02-668 (La.5/3/02), 815 So.2d 107.

Defendants argue, contrary to what the trial court held, that La.Civ.Code art. 2495 is applicable and controlled the Act of Cash Sale. Louisiana Civil Code Article 2495 provides as follows:

> When an immovable described as a certain and limited body or a distinct object is sold for a lump price, an expression of the extent of the immovable in the act of sale does not give the parties any right to an increase or diminution of the price in the case of surplus or shortage in the actual extension of the immovable.

Article 2495 mentions only the "act of sale" and does not reference purchase agreements. In examining the description of the property in the Act of Cash Sale, it seems clear the property was described as a "certain and limited body or a distinct

-3-

object."[2] *Id*. The description stated what was being sold was "[a]ll of the Seller's rights, title and interest to a certain piece, parcel, or tract of land . . . **SOUTH OF THE CENTER LINE OF PETITE RIVIERE** . . . in Sections 2, 9, 10, 11, 13, 14, &15."[3]

The Louisiana Supreme Court has long held that when a sale is made pursuant to specific boundaries, it is a sale *per aversionem*. *Johnston v. Quarles*, 3 La. 90 (1831). To constitute a sale *per aversionem*, the buyer must acquire the land within defined boundaries. *Passera v. City of New Orleans*, 167 La. 199, 118 So. 887 (1928). Such a purchase "conveys all of the land within the boundaries given, whether the measure be correctly stated in the deed or not. The designation of the boundaries control the enumeration of the quantity." *Id*. at 202.

In *Campbell v. Cook*, 151 La. 267, 91 So. 731 (La. 1922), the purchaser sought a credit on the purchase price, because the property was said to contain 177 acres more or less, but in fact only contained 123.53 acres. The act of sale described the property as being bounded by three adjoining properties and the Cane River. The court found the boundaries set forth in the legal description were accurate, even if the measurement was not. The court found ". . . the jurisprudence is settled that where there is error as to quantity and none as to boundary, the purchaser cannot claim a diminution of the price in the absence of concealment and fraud. [*Gughlielhmi v. Geismar*, 46 La. Ann. 280, 14 So. 501.]" *Id*. at 269. Citing La.Civ.Code art. 2495, the court held the sale was *per aversionem* and that no price adjustment was due.

Long-Fork argued below that the Purchase Agreement is the final expression of the parties' intent, and claims it evidenced a "mutual" intent that the price per acre

---

[2] Long-Fork in its brief acknowledges "the description in the Act of Sale was *per aversionem*. . . ." It argues even though this is so, the "common intent that the subject sale be controlled on a price per acre basis" should override this fact.

[3] Petite Riviere refers to a river in Avoyelles Parish.

should control. Defendants maintain that the price per acre was used to determine what the sales price would ultimately be in the Act of Cash Sale. In finding in favor of Long-Fork the trial court determined that the silence in the Act of Cash Sale of the price per acre terms did not preclude proof of the obligation that the sale was to be on a price per acre basis. The trial court found that the "obvious and apparent intent of the parties throughout this entire transaction was that the property was to be sold on a price per acre basis."

The trial court's written reasons for judgment indicate it put great import on the use of the word "approximately" in the Act of Cash Sale. Those reasons provide:

> [D]escribing a tract to be "approximately 2,759[acres] more or less" is certainly an indication that the parties to the act of sale knew that there were other terms potentially applicable concerning price, and quite naturally, those terms are the terms reflected in the purchase agreement, being a price per acre. This confirms the parties intent that the sale be on a "per acre" price.

We do not reach the same conclusion as the trial court. It was incumbent on the parties to set an acreage amount to determine a final sales price in the Act of Cash Sale. It is, at best, pure speculation for the trial court to ascribe the meaning it did to the parties' use of the word "approximately." Defendants asserted that the use of the word "approximately" was a further confirmation, along with the use of the phrase "more or less," that acreage was only incidental rather than essential to the transaction. Certainly, this is as plausible an explanation for the use of the word "approximately" as what the trial court found.

Of much greater significance to this court is the use of the phrase "more or less" when describing the property sold between the parties. A reading of the phrase "approximately 2,759 [acres] more or less" leads to a common sense conclusion that the exact acreage amount was *not essential* to the transaction. It would be difficult to conclude otherwise. Thus, we cannot agree with the trial court and Long-Fork that

there was a mutual consent between the parties that the price per acre should control, particularly noting the Act of Cash Sale excluded the price per acre language contained in the Purchase Agreement.

Long-Fork also points to its Certificate of Authority as evidence of the parties' mutual intent that the price per acre provision survived to the Act of Cash Sale. We note that this Certificate of Authority was executed by Long-Fork alone. Further, it lists $2,896,950.00, the price listed in the Act of Cash Sale, as the "*total* sales price."

Defendants, in arguing the Purchase Agreement was not the final expression of the parties' intent, noted that there "were a total of thirteen (13) differences between the Purchase Agreement and the Act of Sale."[4] They point out that such extensive differences between the two are at odds with Long-Fork's assertions that there were no changes or negotiations prior to the perfection of the Act of Cash Sale. We agree.

Long-Fork also dismisses the failure of the Act of Cash Sale to contain any clause with respect to the price per acre controlling as "unfortunate" and an "error." Although alleging "error" as the reason for the absence of any clause with respect to the price per acre controlling, Long-Fork did not sue for reformation of the Act of Cash Sale as was done in *Teche Realty & Inv. Co. v. Morrow*, 95-1473 (La.App. 3 Cir. 4/17/96), 673 So.2d 1145. Reformation is an equitable remedy that is available to correct mistakes when the instruments as written do not reflect the true intent of

---

[4] Many of the differences between the Purchase Agreement and Act of Cash Sale are significant. The Purchase Agreement states that the property in question would be conveyed "free and clear of any encumbrance, servitudes, conditions or restrictions which would render the property unsuitable for the purposes reasonably intended by the Vendee." However, the Act of Cash Sale contains specific listed exceptions which the property was taken subject to. The Purchase Agreement provides that a survey "will be performed" of the strip between Spring Bayou Road and Little River. The Act of Cash Sale noted the only survey performed was that of the servitude of passage.

-6-

the parties. *See Agurs v. Holt*, 232 La. 1026, 95 So.2d 644 (1957); *WMC Mortgage Corp. v. Weatherly*, 07-75 (La.App. 3 Cir. 6/13/07), 963 So.2d 413. If Long-Fork believed the Act of Cash Sale did not accurately reflect the true intent of the parties, the appropriate action would have been a suit for reformation.

Furthermore, this court has held that the presence of error is irrelevant to the applicability of La.Civ.Code art. 2495. In *Kile v. Louisiana Limestone Aggregates, Inc.*, 378 So.2d 978 (La.App. 3 Cir. 1979), *writ denied*, 380 So.2d 71 (1980), Louisiana Limestone Aggregates (LLA) sought a piece of property of at least three acres to build a facility for storing and selling its products. Representatives of LLA examined a piece of land owned by Kile on foot and viewed it from the air. A purchase agreement describing the property by reference to boundaries was signed. This court determined the property description set forth a certain and limited body such as to fall within the scope of La.Civ.Code art. 2495. After the purchase agreement was signed, LLA discovered the tract only encompassed two acres and was insufficient to build its facility. LLA refused to purchase the property and Kile brought suit for specific performance. This court was faced with a question of what is the effect of a *per aversionem* sale where both parties were mistaken as to the quantity of land. We stated:

> We conclude that the description at hand is "per aversionem," as being within "fixed boundaries." LLA is obligated to purchase the property so described even though the parties to the agreement were under the impression that the area contained three acres instead of approximately two acres as reflected by the survey. LLA's contention that the deficiency in area was an error of fact that would justify the invalidation of the agreement, must yield to the clear law of "per aversionem."

*Id*. at 983. Even though there was acknowledged mutual error between the parties in *Kile*, this court found such error was irrelevant to the applicability of La.Civ.Code art. 2495. Likewise, any error alleged by Long-Fork is equally irrelevant in this case.

-7-

Long-Fork also argues the language of the Purchase Agreement should control over the language of the Act of Cash Sale. In support of this position, it cites the case of *Hingle Brothers, Inc. v. Bonura*, 248 So.2d 391 (La.App. 4 Cir. 1971). We find *Hingle* distinguishable on the facts and find it inapplicable to the situation presented here. In *Hingle*, the issue was whether the purchaser of the land could recover from the seller the cost of certain street improvements that were made before the sale, but which were not assessed against the property until after the sale. *Hingle* did not deal with an action seeking a supplement to the purchase price pursuant to La.Civ.Code articles 2492 through 2495. *Hingle* was decided based upon the legal warranty of title as governed by the Civil Code.

Further, the court in *Hingle* noted the act of sale need not conform to the purchase agreement if "varied by mutual consent." The trial court in the present case concluded there was "absolutely no evidence of mutual consent to change the purchase agreement." We disagree. The description of the property in the Act of Cash Sale and the deposition testimony of Charles Mitchell indicate it was Long-Fork's intent to convey a particular piece of land for a set price. Mitchell, who was a co-managing partner of Long-Fork testified as follows:

Q. But you came to an agreement to sell all land south of the river?

A. Right.

Q. And that is what you intended to convey both through the purchase agreement and the Act of Sale?

A. Correct.

. . . .

Q. So correspondingly, it was your intention, Long-Fork's intention, to convey all land that Long-Fork had south of Little River?

A. Correct.

-8-

The jurisprudence holds that the act of sale represents "the conclusion of the negotiation process and embodies the final expression of the parties' intent." *Esplanade Management, Ltd. v. Sajare Interests*, 498 So.2d 289, 292 (La.App. 4 Cir. 1986); *see also Teche Realty*, 673 So.2d 1145. An authentic act constitutes full proof of the agreement it contains, as against the parties. La.Civ.Code art. 1835.

The Act of Cash Sale, unlike the Purchase Agreement, did not include any "price per acre" language. The Act of Cash Sale provides the latest and best expression of the parties' intent with respect to price. Thus, we find the presumption provided by La.Civ.Code art. 2495 serves to reinforce the "mutual intent"of the parties in this case.

Applying La.Civ.Code art. 2495 to the Act of Cash Sale confirms that the object of the sale was to include all of the property south of the centerline of Petite Riviere in specified sections. The Act of Cash Sale also states a lump price. Therefore, both requirements are met for the sale of a certain and limited body. Thus, the legal description used in the Act of Cash Sale makes the sale a transaction pursuant to La.Civ.Code art. 2495. We find, contrary to the trial court, that the language of "approximately" 2,759 acres "more or less" supports this conclusion.

Finding this was a sale pursuant to La.Civ.Code art. 2495, the one-year prescriptive period allowed for in La.Civ.Code art. 2498 is inapplicable here. Because La.Civ.Code art. 2495 is the controlling statute, the period of time to seek a supplement of the sales price ends with the act of sale. As Defendants note, since the Purchase Agreement contained the "price per acre shall control" language, Long-Fork did have the right to seek an adjustment of the purchase price prior to the closing of the sale. Had Long-Fork surveyed the property, as was its right, the total price could have been adjusted prior to closing. It is certainly reasonable to conclude

that if the price per acre were the controlling factor in the setting of the sales price, Long-Fork would have conducted a survey. However, Long-Fork did not survey its property, further confirming its intent was not to sell a certain quantity of property (which would be governed by La.Civ.Code art. 2492), but to sell all of its property south of the centerline of the Little River regardless of acreage. As such, La.Civ.Code art. 2495 is controlling and Long-Fork was not entitled to "any right to an increase or diminution of the price in the case of surplus or shortage in the actual extension of the immovable the property." The trial court erred in holding otherwise, and we reverse the trial court's judgment awarding Long-Fork a supplement to the purchase price and attorney fees and render judgment granting the Motion for Summary Judgment filed by Defendants.

Long-Fork answered the appeal and contends the trial court erred in finding that Defendants did not violate the right of first refusal granted to Long-Fork in the Act of Cash Sale. Defendants acknowledge the Act of Cash Sale granted a right of first refusal in favor of Long-Fork. However, Defendants note the Act of Cash Sale also contained an exception to the right of first refusal, providing as follows:

> Seller's right of first refusal will not be applicable in the case of a subsequent transfer of the Property by Purchaser to Roland F. Dugas, Jr., Roland F. Dugas, III or any entity which Roland F. Dugas, Jr. or Roland F. Dugas, III, either individually or collectively, own a substantial interest.

In this case, on June 9, 2004, the subject property was sold by Petite Riviere to Shawn S. Horton, Jill Horton, Donald R. Horton, Jr., Hershel J. Horton and Kendall Corey Horton (the Roseland Group) for the sum of $2,978,686.00. That same day, an act of exchange was executed by which the Roseland Group transferred the property to the R. Dugas Family, L.L.C. This circuitous ownership route was engaged in by the R. Dugas Family, L.L.C. for tax purposes.

-10-

The trial court found the exception applied in this case, stating it was "obvious from the circumstances of this proceeding that Petite Riviere complied with the *intent* of the right of first refusal provision which provided that same would not be applicable in a case of a subsequent transfer of property by Petite Riviere to certain Dugas individuals or any entity which they own an interest. It is clear that the R. Dugas Family, LLC is such an entity and the mere transfer to the Horton Group for financial and/or tax reasons is of no import." We find no error in the trial court's ruling that Defendants did not violate the right of first refusal.

**DECREE**

For the foregoing reasons, we reverse the trial court's judgment awarding Long-Fork a supplement to the purchase price and attorney fees and render judgment granting the Motion for Summary Judgment filed by Defendants. We affirm the portion of the judgment holding that Defendants did not violate the right of first refusal. Costs of this appeal are assessed to Plaintiff, Long-Fork, L.L.C.

**AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.**