MOORE, J.
hThe sellers, Rebekah W. Masters, Wendell Wyatt, Juanita W. Tucker and David Biddle (“the Wyatts”), appeal a judgment ordering a reduction of purchase price of $11,885.71 to the buyers, Edward and Bonnie Takewell, and awarding attorney fees of $3,260. For the reasons expressed, we reverse and render.

Factual Background

On March 3, 2009, the Takewells signed a standard-form residential agreement to buy or sell (“buy-sell agreement”) by which they agreed to buy from the Wyatts a tract of land on Hwy. 80 in Calhoun, Ouachita Parish. The buy-sell agreement described the tract as a “beautiful 7 acres in perfect location for grocery store, storage buildings — offices—duplexes—or just build the home of your dreams.” Although the Wyatts were asking $87,000, they accepted the Takewells’ offer of $80,000. On March 20, the parties executed a cash sale deed describing the property as follows (with boldface in the original):
All that portion of the East one half of the Northwest quarter of the Northeast quarter (E £ of NW 1/4 of NE 1/4) of Section 25, Township 18 North, Range 1 East, Ouachita Parish, lying south of the Dixie Overland Highway, comprising a total of 10 acres, more or less.
LESS AND EXCEPT a one acre tract of land sold by deed filed in Conveyance Book 1401, Page 399, and a two acre tract of land sold by deed filed in Conveyance Book 1205, Page 479, of the records of Ouachita Parish, Louisiana.
Unable to find all the physical boundaries of the tract (it was seriously overgrown) and reluctant to impinge on their neighbors’ lands, the Takewells hired a surveyor, James Braswell, who found that the tract contained “5.96 ± acres,” nearly 15% less land than stated in the deed.
|2In March 2010, the Takewells filed this suit for a reduction in purchase price. Describing the transaction as a lump sum sale under La. C.C. art. 2494, they demanded a rebate of $11,885.71, the pro *303 rata shortage. They also demanded attorney fees under the buy-sell agreement.
The Wyatts responded that the surveyor failed to include property affected by a 1939 right-of-way agreement for the Dixie Overland Highway (now known as Hwy. 80 or Cypress Street) and measured only to the south edge of the right-of-way instead of to the centerline of Hwy. 80. They also argued that the sale was actually one per aversionem under La. C.C. art. 2495, and not subject to any reduction for shortage.
At trial on June 2, 2011, Braswell, the surveyor, testified that the standard practice when a property abuts a highway is to measure to the edge of the right-of-way, and not to the centerline. Had he included the right-of-way, this would have added 0.37 acres to the total. Elaine Thomason, the realtor who handled the sale, testified that the sellers always described the tract as seven acres; she saw no boundaries on the property. Mr. Takewell also testified that he always understood it to be seven acres; he maintained he would not have offered $80,000 for a smaller tract. He stated that the offer was a lump sum, not a per-acre price. He admitted that he had placed a notation on the buy-sell agreement, “Buyer would like seller to show exact corner at back of right side,” but he did not get this information prior to the sale and did not hire the surveyor until afterward.
Mrs. Masters testified that she and her siblings had inherited this property from their parents, who bought it in the late 1960s. They always ¡(¡understood it to be seven acres, and the two sales recited in the property description and the tax assessor’s chart confirmed this; they had no intent to mislead anybody as to acreage. She agreed that the tract was so overgrown that she could not say where the boundaries were. Her husband, Jimmy Masters, testified that at the realtor’s request, he attempted to mark the back corners, but could not find all the boundaries. He thought the missing one acre was taken by the Hwy. 80 roadbed.
By “ruling and judgment,” the court found that the Takewells “did not get whet they intended nor what they paid for” and were entitled, under Art. 2494, to a reduction. The court awarded the reduction sought, $11,885.71. By later “ruling, judgment and order,” the court rejected the Takewells’ claim of a $9,729 attorney fee and awarded, instead, the reasonable fee of 32.60 hours at $100 an hour, or $3,260.
The Wyatts have appealed, raising four assignments of error.

The Parties’ Positions

By their first assignment, the Wyatts urge the court erred in finding this to be a lump sale, Art. 2494, when in fact it was a sale per aversionem, Art. 2495, for which no reduction is allowed. They argue that a sale per aversionem is a sale “with an indication of boundaries for a lump price,” Johnston v. Quarles, 3 La. 90 (1831), La. C.C. art. 2495, comment (b), and this applies whether the boundaries are visible or not, Cornish v. Kinder Canal Co., 267 So.2d 625 (La.App. 3 Cir.), writ ref'd, 263 La. 624, 268 So.2d 679 (1972). This property is bounded by a highway and by section lines, which despite being invisible are true boundaries, La. C.C. art. 78414 and Cornish v. Kinder Canal Co., supra. This sale, despite the repeated references to “7 acres,” is actually per aversionem and not subject to any reduction of price for shortage. Also, including the acreage measurement does not negate the fact that the sale is along boundaries, Passera v. City of New Orleans, 167 La. 199, 118 So. 887 (1928), and the inclusion of the phrase “more or less” in the description shows that the exact acreage was not essential to the transaction, Long-Fork LLC v. Petite Riviere LLC, 2007-1316 (La.App. 3 Cir. *304 6/11/08), 987 So.2d 831. Further, the buyer’s failure to survey the land suggests that exact acreage was not important to the buyer, Williams v. Townsend, 163 So.2d 871 (La.App. 2 Cir.1964). They argue that the instant description is very similar to the one in Williams and should likewise be construed as a sale per aver-sionem.
The Takewells respond that the district court committed no manifest error in finding a lump sale under Art. 2494. The Third Circuit has distinguished Cornish by holding that if “one boundary of the four-sided tract is not identified in the deed, it is not a sale per aversionem.” Lasiter v. Gaharan, 95-1056 (La.App. 3 Cir. 1/31/96), 670 So.2d 395, writ denied, 96-0573 (La.4/19/96), 671 So.2d 922. They also distinguish the deed in Long-Fork, supra, as containing much more language than “more or less” to refute that the buyers wanted exact acreage.

Discussion

The lump price sale is regulated by La. C.C. art. 2494, which states, in pertinent part:
| sArt. 2494. Sale of immovable for lump price
When the sale of an immovable has been made with indication of the extent of the premises, but for a lump price, the expression of the measure does not give the seller the right to a proportionate increase of the price, nor does it give the buyer the right to a proportionate diminution of the price, unless there is a surplus, or a shortage, of more than one twentieth of the extent specified in the act of sale. * * *
By contrast, the sale of a certain and limited body is regulated by La. C.C. art. 2495, which provides:
Art. 2495. Sale of a certain and limited body or of a distinct object for a lump price
When an immovable described as a certain and limited body or a distinct object is sold for a lump price, an expression of the extent of the immovable in the act of sale does not give the parties any right to an increase or diminution of the price in case of surplus or shortage in the actual extension of the immovable.
These articles were amended in 1993 as part of a large revision to the law of sales. La. Acts 1993, No. 841, § 1. The amendment removed, from Art. 2494, the reference to “a certain and limited body,” and moved this reference to Art. 2495. It also removed from Art. 2495 the term “per aversionem ” (Latin for “by boundary”) and the explanatory phrase “sold from boundary to boundary.” The revision comments explain that the amendment changed the law in part to effect a merger of Arts. 2494 and 2495 “to the effect of making every sale of immovable property described as constituting a certain and limited body a sale per aversionem.” (Emphasis added.) The comments further state that the sale of an immovable “with indication of boundaries” is a sale of a certain and limited body, as are sales “designated by the adjoining owners” and “designated by a particular Improper name.”
Even before the amendment, the jurisprudence held that the “lump sale,” the method of identifying land by acreage only, is the “weakest method known, yielding to every other method.” Motichek v. Perriloux, 231 La. 849, 93 So.2d 190 (1957); W.B. Thompson & Co. v. McNair, 199 La. 918, 7 So.2d 182 (1942). The courts tended to find a sale by boundary whenever possible, as in Johnston v. Quarles, supra, and Fitzgerald v. Hyland, 199 La. 381, 6 So.2d 321 (1942). Boundary *305 descriptions always trumped references to stated amounts of land. Fitzgerald v. Hy-land, supra. The boundaries could be “natural or artificial,” as the court noted in Johnston v. Quarles, supra, and could even be invisible, such as a section line not marked by any physical monuments, as in Cornish v. Kinder Canal Co., supra, Kile v. Louisiana Limestone Aggregates, 378 So.2d 978 (La.App. 3 Cir.1979), unit denied, 380 So.2d 71 (1980), and Dwyer v. Smith, 10 La.App. 506, 121 So. 341 (La.App. 2 Cir.1929). The finding of a sale per aversionem promoted finality and certainty in real estate transactions. J. Peter Kovata, The Revision of the La. Civil Code Sales Title: In Many Ways a Non-Event, 40 Loy. L.Rev. 139,159 (1994).
The amendment approves and continues the jurisprudential tendency to find sales by boundary wherever possible. This is especially apparent in the transfer of the concept “certain and limited body” from the rule of lump sum sales into sales per aversionem, Art. 2495, and by the addition to that article of the concept that “an expression of the extent of the immovable” would not give rise to an increase or diminution of the price. In short, the 17amendment has granted the courts “the tools with which to find sales per aversion-em, even when no visible boundaries exist.” J. Peter Kovata, supra at 159-160.
With these principles in mind, we have closely analyzed the instant property description and are constrained to find that is must be classified as a “certain and limited body” under Art. 2495 and not subject to diminution for a shortage. It describes the tract as lying to the south of the Dixie Overland Highway, a physical boundary, and as comprising the east one-half of the northwest quarter of the northeast quarter (“E jé of NW 1/4 of NE 1/4”) of Section 25, T 18 N, R 1 E, three boundaries that are not physical but are easily ascertainable and universally accepted to mark property boundaries. Under the former Art. 2495, courts deemed section lines sufficient to mark boundaries. Cornish v. Kinder Canal Co., supra; Kile v. Louisiana Limestone, supra; Dwyer v. Smith, supra. Under the revised Art. 2495, which continues and, if anything, expands the reach of sales for a “certain and limited body,” we find the district court erred in classifying this as a lump sale.
With this conclusion, we further find that the Takewells are not entitled to a diminution of the price, despite the “expression of the extent of the immovable” in the act of sale. The statement of extent, or quantity, does not alter the essential classification of the sale. La. C.C. art. 2495; Arms v. New Orleans Area Council, 522 So.2d 668 (La.App. 4 Cir.), writ denied, 523 So.2d 1340 (1988). For these reasons, the Takewells are not entitled to a reduction of the purchase price; the district court’s judgment is legally |swrong, and will be reversed.

Conclusion

In light of our finding that the sale was for a certain and limited body and not subject to diminution under Art. 2495, we pretermit consideration of the Wyatts’ remaining assignments of error. For the reasons expressed, the judgment is reversed and judgment is hereby rendered dismissing the Takewells’ claims at their cost.
REVERSED AND RENDERED.